**ALLIED CHEMICAL CORPORATION and the Travelers Insurance Co., Appellants-Defendants,**

v.

**Harold M. WELLS, Appellee-Plaintiff.**

Supreme Court of Tennessee.

March 19, 1979.

---

Richard W. Krieg, Knoxville, for appellants-defendants.

Robert P. Rule, Jr., Knoxville, for appellee-plaintiff.

## OPINION

HARBISON, Justice.

Appellee, Harold M. Wells, brought this action against his employer and its insurance carrier seeking workmen's compensation benefits as the result of a heart attack which he suffered on January 17, 1977. The complaint alleged that a further attack occurred on August 4, 1977, and these episodes were alleged to "constitute injuries by accident arising out of and in the course of" the employment. It was alleged that they were "the direct and proximate result of the mental and physical exertion and strain" connected with the appellee's work. Appellants denied that the employee had sustained a compensable injury by accident.

Appellee was employed as a supervisor, or foreman, in a factory producing seat belt assemblies for the automobile industry. He was among the management personnel of the factory, and his occupation was basically sedentary in nature. His work involved quality control and inspection of incoming components and outgoing finished products. Several inspectors worked under his supervision. He was required to keep a number of records, to consult with his inspectors and superiors, to check on product quality, and to inspect the machinery and plant area under his control. His employment, however, involved very little physical activity or exertion. The Chancellor did not find that appellee's heart attack was caused or contributed to by any physical activity or exer-

tion on and prior to the date of onset, nor would the record support any such conclusion.

Appellee's basic contention in the litigation has been that his heart attack was caused or contributed to by mental strain and anxiety created by his working conditions. The Chancellor so held, but after a careful consideration of the record, we are of the opinion that appellee's proof is insufficient to bring the case within the statutory requirements pertinent to this case that compensation benefits be the result of injury by accident. T.C.A. § 50–902(d).[1]

While this Court recognized in the case of *Jose v. Equifax, Inc.,* 556 S.W.2d 82, 84 (Tenn.1977), that mental stimulus, such as fright, shock, or excessive unexpected anxiety resulting in injury might justify a compensation award, the present claim goes beyond the parameters suggested in that case. On the date of his initial heart attack, and for several weeks prior thereto, appellee points to no particular incident or episode, physical or mental, as having triggered or precipitated the onset of his heart attack, which resulted in a myocardial infarction. Rather, it is insisted that chronic stress, emotional strain and worry over his job responsibilities and conditions were the precipitating cause, and that his resulting myocardial infarction constituted an industrial "accident" sufficient to support a compensation award.

On January 17, 1977, when appellee suffered the infarction, he was 54 years of age. He was substantially overweight and smoked heavily. As early as 1973 he had been advised by his physician to stop smoking but had not done so, and at the time of his illness he was regularly smoking about one and one-half packages cigarettes daily. His mother had suffered from hypertension, and his physicians testified that appellee also suffered from this condition as well as from atherosclerotic heart disease. In addi-

1. At all times pertinent to this case, only certain *occupational diseases were* covered by the Tennessee Workmen's Compensation Act, unless the employer had opted for full coverage. Diseases of the heart, lung and hypertension arising out of and in the course of all types of employment were made compensable by an amendment which became effective after the present claim arose. *See* T.C.A. § 50–1101 (1978 Supp.).

tion, he had chronic obstructive pulmonary disease with mild congestive heart failure. The lung disease consisted of chronic bronchitis or emphysema, probably related to his smoking.

Appellee testified that prior to January 17, 1977, he had experienced shortness of breath while going about his duties, and his medical records indicate that he had also had chest pains for some indefinite period of time. Both of these symptoms had been relieved by rest. Apparently appellee had not had a physical examination for a number of years prior to the incident out of which this suit arises, nor to his knowledge had he had any heart attack or any other serious illness.

Appellee had been employed by Allied Chemical Corporation since 1968. He worked in a factory in Florida until 1971. He was transferred to Knoxville and had been employed in the Knoxville plant continuously since that time. The record indicates that he was a conscientious and dedicated employee, always willing to undertake any responsibilities assigned to him, and that he cooperated fully with management officials in attempting to carry out their policies. He willingly undertook additional work and responsibilities when assigned to him, and his superiors held him in high regard.

There were a number of changes in appellee's working conditions during the four months preceding his heart attack. Neither party produced any employment records, and the exact chronology of events is somewhat difficult to reconstruct from the record. During either the latter part of September or in early October 1976, however, it appears that there were complaints registered with the employer by Ford Motor Company, one of its principal customers, about quality control and production methods. A number of supervisory personnel were either dismissed or reassigned in what is described in the record as a general "shakeup" at the factory. For some six to eight weeks thereafter, appellee was required to work longer hours, including several consecutive weekends. He testified

that he regularly worked from about 6 or 6:30 a. m. until 5 or 5:30 p. m., approximately eleven hours. His formal job title was that of supervisor.

On November 12, 1976, appellee was notified that he was being replaced as supervisor by one of his foremen, and thereafter he worked as a job foreman. There was no loss of salary involved in this change of responsibility. Apparently, by that time, appellee was no longer working on weekends; at least, he testified that he was notified of this job change on a Friday, and that he was off on the following Saturday and Sunday. He testified that this change in his work assignment caused him great concern and anxiety.

On December 6, 1976 appellee was notified that he would be required to work on a different shift from his previous one. Beginning on December 15, 1976 and continuing through the date of his heart attack, January 17, 1977, he worked on the evening shift. He testified that he was required to attend a short meeting prior to the commencement of the shift at 4 p. m., so that he usually reported for work at about 3:30 or 3:45. He had a break for a meal from 8 to 8:30 p. m. and testified that he usually got home between 2 and 3 a. m. As stated, no time records were filed, but apparently appellee's hours of work on the night shift were somewhat shorter than those on his previous day shift.

Appellee testified that as a result of the change in shift, his sleeping and eating habits were altered. He testified to general concern and worry over conditions at the plant during the entire four-month period prior to his heart attack. As previously mentioned, however, he pointed to no specific incident or series of incidents involving emotional crises or stress either on the day of his heart attack or at any time for more than a month prior thereto. No one else employed at the plant during this time testified. The last specific incident of which appellee complained was that of having to change shifts, a change of which he was notified on December 6 and which took effect on December 15.

Appellee testified that during the afternoon prior to his reporting for work on January 17, 1977, he felt slight nauseous and unwell. He did not eat anything prior to reporting to work. Before his shift began at 4 p. m., he checked some records and also looked for a receptacle in the assembly line area which was reported to need tagging. The regular shift commenced at 4 p. m. Appellee testified that he engaged in no physical exertion but did do some record keeping at a desk and checked with some of his inspectors on product quality and control. He went to the cafeteria at 8 p. m. and purchased some beef stew. While eating this, he became nauseated. He reported to the nurse's station and while there suffered severe chest pain. He was then hospitalized, and it was found that he had suffered a myocardial infarction. He remained hospitalized until early in February when he was permitted to return home. Later in February he was again hospitalized for further observation and treatment. He recuperated at home and by June was able to return to work on a part-time basis. He continued to work until August 4, 1977, when he experienced further chest pain and was advised by his physician to accept a program of long-term disability benefits offered through his employer.

The medical testimony indicates that appellee did not suffer a further myocardial infarction in August, as alleged in the complaint. As we understand it, the claim for workmen's compensation benefits rests upon whether or not the infarction suffered in January 1977 can properly be said to have resulted from an industrial accident within the contemplation of the statute.

As pointed out in the case of *Jose v. Equifax, Inc.,* 556 S.W.2d 82, 84 (Tenn. 1977), a very liberal interpretation has been given in this state to the statutory requirement of "injury by accident." Nevertheless, the Court there stated:

". . . but this still does not embrace every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment. Workmen's compensation coverage is not as broad as general, comprehensive health and accident insurance."

In that case, a number of previous decisions in this state dealing with mental and emotional stimuli were reviewed, and it is not necessary to repeat that discussion here.

Although there is medical testimony in the record indicating that mental and emotional strain, worry and anxiety—even of a chronic, rather than an acute, variety—can contribute to the onset of a myocardial infarction, we are of the opinion that to permit coverage on the facts shown in the present record would expand the statutory criterion of "injury by accident" beyond reasonable limits. The medical testimony is clear that any number of factors can trigger or precipitate a myocardial infarction when coronary arteries are narrowed to the critical point by pre-existing atherosclerotic disease. We are of the opinion that absent either physical exertion or some acute, sudden or unexpected emotional stress directly attributable to employment, an industrial accident should not be deemed to have occurred, even though worry, anxiety or emotional stress of a general nature may have preceded the onset of an infarction.

In the present case there is no evidence that any physical exertion which appellee experienced on or about January 17, 1977 was sufficient to cause his myocardial infarction. Eliminating this, there is simply insufficient evidence in the record of an injury by accident, within the contemplation of the statute, to justify an award of workmen's compensation disability benefits. *See Travelers Ins. Co. v. Evans,* 221 Tenn. 199, 425 S.W.2d 611 (1968); *Bowman v. Smith-Built Homes, Inc.,* 221 Tenn. 102, 424 S.W.2d 801 (1967).

We have examined authorities from other jurisdictions, relied upon by appellee, in which recovery has been allowed for myocardial infarctions and other heart conditions found to have resulted, in whole or in part, from emotional stress or strain. *See generally,* 1B *A. Larson, Workmen's Compensation Law,* § 38.65 (1978).

In many of these, although not in all, some unusual or sudden event involving emotional stress, fright or shock could be pointed to as the precipitating event. In others, the statutory provisions did not include a requirement of injury by accident.

In a case with facts strikingly similar to those presented here, *Millar v. Town of Newburgh*, 43 A.D.2d 641, 349 N.Y.S.2d 218 (App.Div.1973), recovery was denied. There an employee sustained a myocardial infarction as a result of emotional strain. The court said:

> "Briefly stated decedent became 'emotionally upset' when his employer decided to divide his supervisory duties into two separate employments and hired a new man at $10,000 a year, whereas decedent was then receiving $6,000, to take over one of the two departments decedent had formerly jointly headed. There was no decrease in decedent's salary. The 'emotional stress' of being confronted with this employment development, the board has found, led to a myocardial infarction which resulted in decedent's death and thus there was found to have been a compensable accident. Concededly, there is substantial evidence establishing causal relationship and evidence that decedent, in fact, became disturbed at the employer's decision to divide his employment duties and assign a portion thereof to another at a higher salary than decedent was then receiving." 349 N.Y.S.2d at 219.

The court held that a compensable industrial accident had not been demonstrated under these facts.

It is indeed difficult to formulate a general rule that would be applicable to all cases. The issue is usually factual, rather· than legal, but there are obviously limits to any realistic application of the criterion of "injury by accident." Emotional stress, to some degree, accompanies the performance of any contract of employment. When this is "within the bounds of the ups and downs of emotional normal human experience" courts frequently decline to impose liability upon employers for conditions resulting from "cumulated" strain. *See generally* 1B A. Larson, *Workmen's Compensation Law*, p. 7–152 (1978).

The judgment of the trial court is reversed and the suit is dismissed at the cost of appellee.

COOPER, FONES and BROCK, JJ., and HUMPHREYS, Special Justice, concur.