**Eddie Eugene HELTON, Plaintiff-Appellant,**

**v.**

**FOOD LION, INC., Defendant-Appellee.**

Supreme Court of Tennessee, at Knoxville.

Oct. 13, 1987.

Eric D. Christiansen, Greeneville, for plaintiff-appellant.

Gene Paul Gaby, Greeneville, for defendant-appellee.

OPINION

BROCK, Justice.

In this worker's compensation case the trial court denied benefits to the plaintiff-employee, finding that the heart attack suffered by the plaintiff did not arise out

---

of and in the course of the plaintiff's employment with the defendant. The only issue presented is whether or not the evidence supports the finding and conclusion of the trial court. Since this case arose prior to July 1, 1985 the standard of review is whether there is any material evidence to support the findings of the trial court. *Alley v. Consolidation Coal Company*, Tenn., 699 S.W.2d 147 (1985). We affirm the decision of the trial court.

■ The plaintiff was the produce supervisor for a Giant Food Store when the Giant Food Store chain was purchased by defendant Food Lion, Inc. in December 1984. This change in ownership resulted in a change in management so that a Mr. John Anderson, a supervisor of perishables for the defendant, was placed in charge of converting Giant Food Stores in his East Tennessee District to the defendant's way of doing business.

This placed the plaintiff under the management and supervision of Mr. Anderson who first visited the plaintiff's store on February 25, 1985. As the Chancellor noted, the relation between plaintiff and Mr. Anderson did not "get off on the right foot." According to the plaintiff, Anderson criticized him for not having certain items on hand, saying: "Damn, how do you think I can get this rack up when you ain't got the stuff in here?" Anderson also criticized the plaintiff for carrying too much inventory on some items, saying: "You've got enough damn stuff in here for five stores ... I'll give you two weeks to get it down to five cases." According to the plaintiff, this caused him to become nervous "and tore up" and he remained nervous and under pressure until his heart attack occurred on March 8, 1985. After the February 25 meeting, Anderson called the plaintiff on several occasions and asked plaintiff how he was getting along and whether he had everything straightened up. Plaintiff testified, however, that these calls from Anderson upset him. Then, on March 4, 1985 the plaintiff put in approximately 12 hours of work before leaving the store at 3:40 p.m. At about 5:00 p.m. he was called at his home by the store manager, Mr. Talbott, who told him that Mr. Anderson was there and that the plaintiff was "to get my butt back in there" and that his job was not finished. This upset the plaintiff greatly because he had never been called in before in such a manner and because Talbott had approved the condition of his produce section before plaintiff had left work at 3:40 p.m.

Upon arriving at the store, plaintiff was told by Anderson that some of the produce was not fresh, that he was not going to "put up with this," that he was not going to "baby-sit the plaintiff" and that if the plaintiff could not do the job the best thing for the plaintiff to do was to "hit the front door." Mr. Talbott was present during this "dressing down" and its effect upon the plaintiff was to cause him to become severely upset. Four days later on March 8, 1985 he suffered a heart attack. It is the plaintiff's theory in this case that this humiliating encounter precipitated and caused his heart attack.

Dr. Stanley Erwin, the cardiologist who treated the plaintiff, testified that the above described job stress was to a reasonable degree of medical certainty a causal or contributing factor to the plaintiff's heart attack. However, Dr. Erwin also testified that there were other risk factors involved in the plaintiff's case and history. Plaintiff was 33 years of age at the time of the attack and was 6'1" tall and weighed 260 lbs. At one time, he had weighed in excess of 300 lbs. and had suffered high blood pressure, before loosing 86 lbs. in 1981. The plaintiff smoked 15 to 20 cigarettes a day for 15 years and both of his parents died as a result of some kind of "heart trouble." According to the doctor, obesity, high blood pressure, cigarette smoking and the family history of heart disease were all risk factors associated with heart attacks. Diagnostic procedures performed by Dr. Erwin revealed that at the time of the heart attack the plaintiff had a severe arteriosclerotic heart disease. The doctor testified that the plaintiff's work did not cause this arteriosclerotic heart disease and that the plaintiff's 50 to 75 percent permanent disability resulted from the heart disease and not from the heart attack. According

to Dr. Erwin the plaintiff has recovered from the heart attack and the temporary total disability which followed the heart attack.

Most of the seeming inconsistency in our decisions in heart attack cases under the worker's compensation laws have resulted from differences in the evidence presented in the various cases, especially the testimony of medical experts. In *Allied Chemical Corporation v. Wells*, Tenn., 578 S.W.2d 369 (1979) the trial court awarded benefits to a plaintiff who had suffered a heart attack as a result of "general concern and worry about conditions" at his plant in the four months preceding his heart attack. His complaints involved a "shake up" at the factory where he worked, his demotion from supervisor to job foreman and an increase in his working hours. The last specific incident about which he complained, a change of shift, occurred over a month prior to his heart attack. We denied recovery, holding that "absent either physical exertion or some acute, sudden, or unexpected emotional stress directly attributable to his employment, an industrial accident should not be deemed to have occurred, even though worry, anxiety or emotional stress of a general nature may have preceded the onset of an infarction." We further noted that although the issue is usually factual, "there are obviously limits to any realistic application of the criterion of 'injury by accident.'"

This Court again denied benefits in *Clevenger v. Plexco*, Tenn., 614 S.W.2d 356 (1981), affirming the judgment of the trial court denying benefits. In *Clevenger*, as in the instant case, the trial court found that there were numerous other factors causing the plaintiff's medical condition other than his employment. Unlike the situation in *Wells*, the plaintiff did point to a specific incident occurring on the same day as his heart attack and which he identified as the precipitating cause. The plaintiff was reprimanded for his work performance in the presence of other employees. The plaintiff was told that improvement in his performance needed to occur within a couple of weeks. With regard to this evidence, we pointed out that even if the plaintiff's version of this meeting was correct, the meeting could not qualify "as the kind of mental stimulus, fright, or shock" characterizing heart attacks that are injuries by accident. The meeting fell within the observation that "every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment" is not embraced by the worker's compensation statute.

But in *Cabe v. Union Carbide Corporation*, Tenn., 644 S.W.2d 397 (1983) this Court reversed the holding of the trial court and found that the plaintiff's heart attack was compensable. In *Cabe*, unlike *Clevenger*, the plaintiff had no pre-existing medical problems that could have caused the heart attack. The heart attack itself resulted, according to the trial court's findings, from an unusual incident in which the plaintiff's supervisor engaged in a heated and upsetting argument with a subordinate in an attempt to enforce plant safety rules. Plaintiff suffered the heart attack within five minutes of the argument. In *Cabe* we distinguished *Clevenger*, noting in particular the differences in the alleged precipitating events. Moreover, the plaintiff in *Clevenger* had failed to establish a causal connection between the alleged precipitating event and the heart attack itself.

More recently, in *Black v. State*, Tenn., 721 S.W.2d 801 (1986) we again awarded benefits, reversing the judgment of the Tennessee Claims Commission denying the plaintiff's worker's compensation claim. In the *Black* case, the heart attack occurred almost immediately after the plaintiff had engaged in a very heated argument with his superior regarding vacation time. We found that the case was indistinguishable from the pertinent facts in the *Cabe* case, respecting the acute, sudden and unexpected nature of the precipitating event. In *Black* we acknowledged the difficulty in formulating a general rule applicable to all cases of this kind but recognized that in *Wells* we had "established criteria that we have followed in subsequent cases, including *Cabe*. In *Wells* we held that a compensable injury by accident occurs when the injury results from some acute, sudden or unexpected emotional stress directly attributable to employment, but is not covered

when the injury is preceded by worry, anxiety or emotional stress of a general nature." 721 S.W.2d at 803.

We agree with the trial court in the instant case that the precipitating event relied upon, the abrasive confrontation between the plaintiff and Anderson on March 4, 1985, four days prior to the heart attack which occurred on March 8, 1985 does not qualify as the "acute, sudden or unexpected emotional stress directly attributable to employment" which we held in *Wells* is sufficient to constitute a compensable accident in this type of case. On its facts, especially in view of the moderately severe arteriosclerotic heart disease which the plaintiff suffered long prior to his heart attack this case is more akin to *Clevenger* in which we denied benefits on the ground that a compensable accident had not been shown.

The Chancellor concluded his opinion as follows:

It is a close question. The stressful situation clearly was of recent origin relative to plaintiff's long time employment. Nevertheless, the words 'acute, sudden or unexpected' connote an event that is defined by minutes or hours, rather than days or weeks. Plaintiff's last stressful meeting with Mr. Anderson occurred four days prior to his heart attack. It would seem that his mental state would be characterized as 'worry, anxiety, or emotional stress of a general nature' and, as such, would not constitute an accident as defined by the Worker's Compensation Act. Plaintiff's suit therefore must be dismissed.

We agree with those conclusions.

Accordingly, the decree of the Chancellor is affirmed and costs incurred upon this appeal are taxed against the appellant and surety.

HARBISON, C.J., FONES and DROWOTA, JJ., and FRANKS, Special Justice, concur.