# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs - October 17, 2000

## ROBERT W. CUNNINGHAM, JR, ET AL. v. SHELTON SECURITY SERVICE, INC., ET AL.

**Appeal by Permission from the**
**Supreme Court Special Workers' Compensation Appeals Panel**
**Chancery Court of Davidson County**
**No. 95-2712-I(II)    Hon. Carol McCoy, Chancellor**

---

### No. M1998-00023-SC-WCM-CV - Filed March 1, 2001

---

In this workers' compensation case, the estate of the employee, Robert W. Cunningham, Sr., has appealed from a chancery court judgment dismissing a claim for death benefits filed against the employer, Shelton Security Service, Inc. The employee, who worked as a security guard for the employer, died of heart failure while performing his duties at a store. At the close of the employee's proof, the trial court granted the employer's motion to dismiss on the basis that the emotional stress experienced by the employee the night of his death was not extraordinary or unusual for a security guard. The Special Workers' Compensation Appeals Panel, upon reference for findings of fact and conclusions of law, found that there was sufficient evidence of causation to warrant a trial and, thus, reversed the trial court's dismissal. Thereafter, the employer filed a motion for full Court review of the Panel's decision. We granted the motion for review to consider whether the trial court erred in dismissing the employee's claim on the basis that his heart failure did not arise out of the employment because it was not caused by a mental or emotional stimulus of an unusual or abnormal nature, beyond what is typically encountered by one in his occupation. After carefully examining the record and considering the relevant authorities, we agree with the Panel and reverse the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law by the Special Workers' Compensation Panel Affirmed; Judgment of the Trial Court Reversed and Case Remanded**

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined. FRANK F. DROWOTA, III, J., not participating.

Angus Gillis, III, Nashville, Tennessee, for the appellants, Shelton Security Service, Inc. and Employers Insurance of Wausau.

Terry R. Clayton, Nashville, Tennessee, for the appellees, Robert W. Cunningham, Administrator of the Estate of Robert W. Cunningham, Sr., and William E. Cunningham, Jr.

## OPINION

## BACKGROUND

Robert W. Cunningham, Sr. ("employee") was employed by Shelton Security Service, Inc. ("employer") as a security guard. On May 9, 1991, the employee began working as a guard assigned to the Little Barn Deli and Market on Clarksville Highway in Nashville. He died of heart failure on March 5, 1992, while performing his duties at the store.

At trial, Mishie Lynn Taylor, a night clerk at the store, testified that in the early morning hours of March 5, 1992, three young men entered the store. The employee, Robert Cunningham, Sr., who was performing his duties as a security guard, asked the young men to leave because they were attempting to shoplift. Taylor stated that the suspected shoplifters "talked back" to the employee and cursed at him. She described the verbal confrontation inside the store as "very loud" and said that the employee shouted at the individuals to leave the premises. The employee followed the suspected shoplifters outside the store. Although Taylor could not hear what was said while the group was outside, she could tell that they were yelling at each other. The employee produced his billy club, but did not use it. Taylor testified that the young men threatened to come back and kill the employee. According to Taylor, the employee had similar verbal confrontations with people at the store once or twice a week. She said it was common for him to "go out and yell at these people."

Taylor recounted that although the employee was upset when he returned to the store, he did not act overly concerned about the incident. A short time later, however, the employee began to complain that he did not feel well. He began rubbing his arm. Then, he said that he felt "funny and weird"; that he "had never felt like that before"; and that he could not be still. Taylor told the employee to stay where she could observe him at the front of the store, but he went outside. A few minutes later, Taylor found the employee unconscious in his car. Although Taylor promptly called an ambulance, the employee died before he reached the hospital.

Dr. Melvin Lightford, an internist and emergency room physician, testified that the employee died from "sudden cardiac death." He explained that sudden cardiac death can be caused by many things, both stressful and non-stressful, such as arrhythmia, myocardial infarction, a blood clot, and arteriosclerotic cardiovascular disease. Dr. Lightford admitted that he did not know exactly which of these possible problems caused the employee's death. However, Dr. Lightford stated that the

employee's death was "related to the recent . . . events within an hour or two of his death." In response to a hypothetical question setting out the facts of the employee's death, Dr. Lightford testified that there was a "relationship" between the confrontation with the young men and the employee's death. Dr. Lightford opined that "the events, as hypothesized to me, did indeed precipitate what is called sudden cardiac death . . . ."

The employee's death certificate stated the cause of death as arteriosclerotic cardiovascular disease. However, no autopsy was performed. Thus, according to Dr. Lightford, the cause of death listed on the death certificate was an educated guess made by the medical examiner and not an actual diagnosis. After the employee's estate filed suit seeking death benefits, the employer filed a motion to exhume the employee's body for the purpose of conducting an autopsy. The trial court granted the employer's motion, but on appeal we reversed because the employer failed to make a timely request for an autopsy after obtaining reasonable notice of its necessity. See Cunningham v. Shelton Sec. Serv., Inc., 958 S.W.2d 338 (Tenn. 1997).

At the close of the employee's proof, the trial court granted the employer's motion to dismiss because the emotional stress experienced by the employee the night of his death was "not extraordinary nor was it unusual in comparison to the stress he ordinarily experienced in that type of job." The Special Workers' Compensation Appeals Panel, upon reference for findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 50-6-225(e)(3), reversed the trial court's dismissal on the basis that there was sufficient evidence of causation to warrant a complete trial. Thereafter, the employer filed a motion for full Court review of the Panel's decision. We granted the motion to consider whether the trial court erred in dismissing the employee's claim on the basis that his heart failure did not arise out of the employment because it was not caused by a mental or emotional stimulus of an unusual or abnormal nature, beyond what is typically encountered by one in his occupation.

## ANALYSIS

## Standard of Review

The standard of review in a case such as this is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise.[1] Tenn. Code Ann. § 50-6-225(e)(2) (1999 & Supp. 2000). When issues regarding credibility of witnesses and the weight to be given their testimony are before a reviewing court, considerable deference must be accorded the trial court's factual findings. See Krick v. City

---

[1] The standard of review is not, as suggested by the employee, the same as that of a directed verdict, i.e., the trial court's action can be sustained only if there is no material evidence to support a verdict for the plaintiff under any theory being asserted. See Williams v. Brown, 860 S.W.2d 854, 857 (Tenn. 1993). The motion to dismiss involved here was made under Tenn. R. Civ. P. 41.02(2) (motion for involuntary dismissal in non-jury action). The motion was not one for a directed verdict made under Tenn. R. Civ. P. 50. Although the two motions are somewhat similar in purpose, there is a fundamental difference between them in that the latter is applicable to a jury trial and the former a bench trial. City of Columbia v. CFW Construction Co., 557 S.W.2d 734, 740 (Tenn. 1977).

of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997). However, this Court may draw its own conclusions about the weight and credibility of expert testimony when the medical proof is presented by deposition, as it was here, since we are in the same position as the trial judge to evaluate such testimony. See Krick v. City of Lawrenceburg, 945 S.W.2d at 712; Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676-77 (Tenn. 1991).

**Compensability**

In order to be eligible for workers' compensation benefits, an employee must suffer an "injury by accident arising out of and in the course of employment which causes either disablement or death . . . ." Tenn. Code Ann. § 50-6-102(12) (1999). The statutory requirements that the injury "arise out of" and occur "in the course of" the employment are not synonymous. See Sandlin v. Gentry, 300 S.W.2d 897, 901 (Tenn. 1957). An injury occurs "in the course of" employment if it takes place while the employee was performing a duty he or she was employed to perform. Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993). Put another way, "the injury must have substantially originated from the 'time and space' of work, resulting in an injury directly linked to the work environment or work-related activities." Harman v. Moore's Quality Snack Foods, 815 S.W.2d 519, 527 (Tenn. Ct. App. 1991) (citation omitted). Thus, the course of employment requirement focuses on the time, place and circumstances of the injury. Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483, 487 (Tenn. 1997).

In contrast, "arising out of" employment refers to "cause or origin." Id. An injury arises out of employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Fink v. Caudle, 856 S.W.2d at 958. The mere presence of the employee at the place of injury because of the employment is not sufficient, see Thornton v. RCA Service Co., 221 S.W.2d 954, 955 (Tenn. 1949), as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. See Travelers Ins. Co. v. Googe, 397 S.W.2d 368, 371 (Tenn. 1965); Jackson v. Clark & Fay, Inc., 270 S.W.2d 389, 390 (Tenn. 1954); Thornton v. RCA Serv. Co., 221 S.W.2d at 956-57; Harmon v. Moore's Quality Snack Foods, 815 S.W.2d at 527. As one court has put it, the "danger must be peculiar to the work . . . . [A]n injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." Jackson v. Clark & Fay, Inc., 270 S.W.2d at 390.

In the present case, there is no dispute that the employee's death occurred in the course of his employment. Instead, the dispute focuses on whether the employee's death arose out of the employment. The employer argues that the employee's death did not arise out of the employment because the confrontation with the suspected shoplifters was not an abnormal or unusual occurrence

for a person in the employee's occupation.[2]  The employee's estate responds that the employee's death arose out of his employment as that requirement has been applied in this Court's heart attack cases.  The estate therefore urges us to reverse the trial court's dismissal of the case.

We agree with the parties that this case is controlled largely by our decisions addressing the compensability of heart attacks.  The heart attack cases in this jurisdiction can be categorized into two groups: (1) those that are precipitated by physical exertion or strain, and (2) those resulting from mental stress, tension, or some type of emotional upheaval.  Bacon v. Sevier County, 808 S.W.2d 46, 49 (Tenn. 1991).  If the heart attack results from physical exertion or strain, it is unnecessary that there be extraordinary exertion or unusual physical strain.  See id.  Thus, it makes no difference that the employee, prior to the attack, suffered from preexisting heart disease or that the attack was caused by ordinary physical exertion or the usual physical strain of the employee's work.  Id.

The rule is different, however, when the heart attack is caused by a mental or emotional stimulus rather than physical exertion or strain.  In such cases, "it is obvious that in order to recover when there is no physical exertion, but there is emotional stress, worry, shock, or tension, the heart attack must be immediately precipitated by a specific acute or sudden stressful event[] rather than generalized employment conditions."  Id. at 52.  Thus, if the heart attack is caused by a mental or emotional stimulus rather than physical exertion or strain, there must be a "climatic event or series of incidents of an unusual or abnormal nature" if a recovery is to be permitted.  Id.  Although "excessive and unexpected mental anxiety, stress, tension or worry attributable to the employment can cause injury sufficient to justify an award of benefits," Reeser v. Yellow Freight Sys., Inc., 938 S.W.2d 690, 692 (Tenn. 1997), the ordinary stress of one's occupation does not because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." Allied Chem. Corp. v. Wells, 578 S.W.2d 369, 373 (Tenn. 1979).  In other words, "[n]ormal ups and downs are part of any employment relationship, and as we have said on many previous occasions, do not justify finding an 'accidental injury' for purposes of worker[s'] compensation law."  Bacon v. Sevier County, 808 S.W.2d at 53 (citations omitted).  Accordingly, the rule is settled in this jurisdiction that physical or mental injuries caused by worry, anxiety, or emotional stress of a general nature or ordinary stress associated with the worker's occupation are not compensable.  The injury must have resulted from an incident of abnormal and unusual stressful proportions, rather than the day-to-day mental stresses and tensions which workers in that field are occasionally subjected.

With these principles in mind, we review the record in the present case to determine whether the employee's death arose out of his employment.  We note first that there was no physical exertion or strain involved in precipitating his heart failure.  Instead, the mental stress or tension associated with confronting the suspected shoplifters caused the heart failure, at least according to some of the medical proof.  Applying the law as just described, the trial court concluded the employee's death was not compensable because he was not confronted with circumstances of an unusual or abnormal

---

[2]  The employer also argues that the employee's death is not compensable because there was no proof of the cause of death and no proof that the death was related to the events of March 5, 1992. The employer also raises a number of evidentiary related issues. We have carefully considered these issues and find them to be without merit.

-5-

nature given his work as a security guard. As the record reflects, verbal confrontations occurred at least once a week at the store, and it was common for the employee to "go out and yell at these people." However, the record also reflects that the individuals chased off by the employee threatened to return and kill him. We believe that this additional circumstance makes a difference and is sufficient to warrant the conclusion that the employee's death did not result from generalized employment conditions, but from something beyond the norm, even for a security guard. Accordingly, we find that the evidence preponderates against the trial court's finding that the employee's death did not arise out of his employment.

The reason, simply put, is that the employee has met the burden of establishing that his heart failure was caused by a mental or emotional stimulus of an unusual or abnormal nature, beyond what is typically encountered by one in the employee's position. We thus reiterate the rule again in this case that if the cause or stimulus of the heart attack is mental or emotional in nature, such as stress, fright, tension, shock, anxiety, or worry, there must be a specific, climatic event or series of incidents of an unusual or abnormal nature if the claimant is to be permitted a recovery, but no recovery is permitted for the ordinary mental stresses and tensions of one's occupation because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." Allied Chem. Corp. v. Wells, 578 S.W.2d at 373. If the rule were otherwise, workers' compensation coverage would become as broad as general health and accident insurance, which it is not. See Jose v. Equifax, Inc., 556 S.W.2d 82, 84 (Tenn. 1977).

We conclude that the evidence preponderates against the trial court's finding that the employee's death did not arise out of his employment. Accordingly, we agree with the Panel that the trial court erred in dismissing the case and that the case must be remanded for further proceedings. We stress in this regard that a dismissal at the close of the plaintiff's proof is rarely appropriate in a workers' compensation case inasmuch as a reversal of the trial court's ruling results in additional proceedings and undue delay. The trial court should instead hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.

## CONCLUSION

In view of the foregoing discussion, we hold that the evidence preponderates against the trial court's finding that the employee's death did not arise out of his employment. Therefore, the trial court's dismissal of the case is reversed and the case remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, Shelton Security Services, Inc. and Employers Insurance of Wausau, and their surety, for which execution may issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE


# ROBERT W. CUNNINGHAM, JR, ET AL. v. SHELTON SECURITY SERVICE, INC., ET AL.


### Chancery Court of Davidson County
### No. 95-2712-I(II)

---

### No. M1998-00023-SC-WCM-CV - Filed May 2, 2001

---

### ORDER

Shelton Security Service, Inc., et al., through counsel, has filed a petition for rehearing pursuant to Tenn. R. App. P. 39. After due consideration, it is ORDERED that the petition for rehearing is DENIED.


PER CURIAM


Drowota, J., not participating