


**FILED**
**Jul 15, 2025**
**09:32 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Darlene Taylor as Surviving Spouse of Darrell Taylor | ) Docket No.     2023-07-5405 |
| | ) |
| | ) State File No.   860327-2023 |
| v. | ) |
| | ) |
| Dale's Recycling, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' Compensation Claims | ) Heard June 13, 2025, |
| | ) in Murfreesboro, TN |
| Allen Phillips, Judge | ) |

---

### Affirmed and Certified as Final

---

In this compensation appeal, the employer argues the trial court erred in awarding the surviving spouse death benefits following the decedent employee's death. The employee's apparent heart attack occurred while he was performing duties associated with his job as a driver for the employer. His surviving spouse sought workers' compensation death benefits, alleging the employee died following a heart attack brought on by physical exertion and mental stressors while working. The employer denied the claim, asserting the employee's heart attack was primarily caused by his pre-existing conditions. In awarding death benefits, the trial court relied on the expert opinion of a cardiologist retained by the claimant, and the employer has appealed. Upon careful consideration of the record and the arguments of counsel, we affirm the trial court's decision and certify it as final.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Richard R. Clark, Nashville, Tennessee, for the employer-appellant, Dale's Recycling

Jonathan May, Memphis, Tennessee, for the employee-appellee, Darlene Taylor as Surviving Spouse of Darrell Taylor

### Factual and Procedural Background

Darrell Taylor ("Employee") worked as a truck driver for Dale's Recycling ("Employer"), a company engaged in the purchase and sale of recycled metal products. Employer dealt in a variety of recycled products, from large metal equipment, such as used

1

HVAC units, to aluminum cans from county recycling centers.  The metal was primarily stored in Milan, Tennessee, and drivers would transport the materials to one of eight locations for the metals to be processed, sorted, and sold by grades.

On June 22, 2023, Employee was driving a truck containing a large load of scrap metal to a processing location in LaGrange, Kentucky.  While driving behind Employee through a construction zone on the interstate, a law enforcement officer, Deputy Dennis Poteet, noticed that some of the scrap metal was falling out of the truck's trailer, at least one piece of which had struck another vehicle.  Upon clearing the construction zone, Deputy Poteet turned on his lights and pulled Employee over.  Another truck stopped behind them because debris from Employee's trailer had struck his vehicle.

After explaining to Employee what he had observed while driving through the construction zone, Deputy Poteet told Employee to better secure his load.  He further advised Employee he would not issue him a ticket if he rearranged the scrap metal in his truck to prevent pieces from falling out of the trailer.  To complete this task, Employee had to climb up on the back tire of the trailer and then up metal rungs welded to the side of the trailer to enter the back.

Meanwhile, the other driver, finding no damage to his own truck, told Deputy Poteet he was going to leave and did not need a report.  Deputy Poteet then reentered his car to make a phone call because it was too loud on the side of the interstate for him to hear.  While seated in his car, Deputy Poteet initially observed Employee moving about inside the trailer, but, after approximately ten minutes, he realized he could no longer see Employee.  Upon completion of the call, Deputy Poteet searched around the truck and inside the cab for Employee.  He then climbed the ladder to enter the trailer, at which time he found Employee lying in the trailer, unmoving, with his eyes open.  Deputy Poteet could not locate a pulse and immediately called emergency medical services, who unfortunately confirmed Employee had passed away at the scene.

Thereafter, Deputy Poteet had the truck towed, and Employee's body was taken to the Grayson County, Kentucky coroner's office.  The coroner did not perform an autopsy or request one be performed, noting the following in his report:

> 57 year old found deceased in dump trailer.  Deceased was stopped [by Deputy Poteet] for losing debris . . . . Deceased spoke to [Deputy Poteet] and did not show signs of distress.  Climbed up into trailer to rearrange load.  After 5 to 10 minutes [Deputy Poteet] could not locate deceased and climbed up into the top of trailer [and] found the deceased.  [History] of hypertension.

The coroner's report listed the cause of death as "cardio respiratory arrest."  Below that, in a section labeled "Due to or as a Consequence of," the coroner wrote "chronic hypertension."  Under another section identified as "Significant Conditions Not Resulting

in Underlying Cause," the coroner wrote "Diabetes." On the death certificate, completed July 3, 2023, "cardiorespiratory arrest" due to "chronic hypertension" and "diabetes" was listed as the cause of death.

Employee's spouse ("Claimant") filed a Petition for Benefit Determination ("PBD") on August 7, 2023, indicating a First Report of Work Injury had not been filed. In response to the PBD, Employer denied Employee's death was primarily caused by work activities based on the indications of his pre-existing conditions of hypertension and diabetes and the findings on the coroner's report. Claimant then retained Dr. Ardindh Kanagasundram, a cardiologist, who reviewed the case and concluded that the combination of physical exertion and emotional stress arising from the traffic stop had caused Employee's "sudden cardiac death." Employer retained Dr. Kishore Arcot, also a cardiologist, who conversely opined Employee's "fatal heart attack was the result of underlying coronary artery disease secondary to his risk factors, including hypertension, Type 2 diabetes, hypercholerolemia, and non-compliance with his prescribed medicine therapy." He further concluded that "the alleged work activities . . . as well as the emotional stress and anxiety are not the primary cause of this unfortunate outcome."

*Lay Testimony*

In preparation for trial, the parties deposed both Deputy Poteet and Bobby Dabbs, Employer's Vice President of Operations at the time of Employee's death. Deputy Poteet testified that on the date of Employee's death, he had been dispatched to a construction zone due to another vehicle hitting some construction barrels. In the course of completing that call, he was driving behind Employee's truck for 5 miles and noticed scrap metal falling out of the trailer, some of which had struck at least one other vehicle. He did not stop Employee's vehicle until they had cleared the construction zone, at which time Deputy Poteet explained why he had pulled Employee over and asked him why he was not using the cover for his trailer. According to Deputy Poteet, Employee advised him the electronics for his cover were not working so he was unable to use it. As such, Deputy Poteet told Employee he would not be writing him a ticket but instructed Employee to secure the remaining load. Deputy Poteet testified that "[Employee] seemed like he was a little nervous, because . . . [he] didn't think [Employee] had a lot of interaction with police." He then explained that Employee "was very anxious and nervous initially," but once Deputy Poteet explained the reason for the stop, Employee "seemed to calm down." Deputy Poteet could not recall the temperature at the time of the stop but did remember that it was a warm day. Finally, when asked if there was anything abnormal about Employee that Deputy Poteet noticed during the stop, he testified "I don't think it was abnormal. I just think he was nervous being around the police."

In his deposition, Mr. Dabbs testified that drivers for Employer were not responsible for manually loading their trailers, but were responsible for making sure the trailers were loaded correctly. He further testified that he could not tell exactly what type of metal pieces

were in Employee's trailer that day based on pictures, but he knew it was metal identified as "400 stainless." He could not estimate the weight of any particular items in the trailer but stated the weight of 400 stainless in general was "low." In regard to the cover for the trailer, Mr. Dabbs testified that if the other electronics for the truck were operational, such as the light system, then the cover should have been operational as well. Finally, Mr. Dabbs could not recall any other incidents involving a driver having to secure his load on the side of the road within the last year.

*Expert Medical Testimony*

The parties also deposed both cardiologists in preparation for trial. Dr. Arcot testified he had reviewed Employee's prior medical records from his primary care physician, as well the depositions of Deputy Poteet and Mr. Dabbs. It was Dr. Arcot's opinion that Employee had several risk factors for cardiovascular disease, including his age, ethnicity, gender, high blood pressure, Type 2 Diabetes, obesity, and a history of high cholesterol. He testified that a heart attack was the "presumed cause of death" in the absence of an autopsy and that Employee had "enough risk factors which created . . . [a] cholesterol burden in the coronaries, and one of them is going to explode." He went on to say, "exertion can exacerbate it, but exertion by itself will not cause a heart attack." On cross-examination, Dr. Arcot admitted that, if asked, he would have cleared Employee to undergo at least certain surgeries from a cardiology standpoint, that Employee's lipid panel from December 2022 was "good," and that, as far as he could tell from the records, Employee had received no medical treatment for any coronary or cardiac symptoms prior to his death.

In contrast, Dr. Kanagasundram testified that "[i]n the absence of the emotional and physical stressors [Employee experienced that day], based on his preexisting risk factors, [he] would not have expected [Employee] to have a sudden cardiac event that day." He explained that Employee had "stable" coronary disease based on the primary care records indicating that he had no ongoing symptoms. Relying on the lipid panel from December 2022 and Employee's recent DOT physical, Dr. Kanagasundram testified the diabetes was well controlled and Employee's lipid panel had "very favorable numbers." Dr. Kanagasundram admitted that "[Employee] could not have plaque rupture by definition leading to sudden cardiac death" if Employee did not also have coronary artery disease, although he posited that a person "can still have ventricular arrythmia and certain cardiac death in the setting of significant emotional and physical stressors" in the absence of coronary artery disease and a plaque rupture. In assessing the cause of Employee's death, he considered the combination of "the fact that he was pulled over by the highway by a police officer, and then asked to climb into the truck and displace the material[, which was] a pretty high acute level of exertion probably from what he was used to at baseline." However, on cross-examination, Dr. Kanagasundram admitted that he "would need to know [Employee's] physical level of activity, his baseline prior to the heart attack to make that causal connection" and that the only baseline information he had was the primary care

records indicating Employee did not have shortness of breath or chest pain with exertion. He testified he could not assign a specific percentage to the different components causing the heart attack, which he agreed were the cardiovascular disease, the emotional distress, and the physical exertion, as well as the heat of the day, although he maintained the primary cause of the heart attack was the combination of the physical exertion and the mental stress from the traffic stop.[1]

Claimant was the only witness to testify in person at the trial on March 11, 2025. She testified she saw her husband on the morning of June 22, 2023, before he left for work, and that she spoke to him two hours later and nothing was out of the ordinary. The coroner called her the day Employee died, and she related to the coroner her husband's health history of high blood pressure and diabetes. She further testified that her husband regularly filled his prescriptions and took his medications, and none of his medical conditions were "out of control." Following the trial, the court issued a compensation order awarding death benefits to Claimant. The court accepted Dr. Kanagasundram's opinion regarding causation over that of Dr. Arcot, determined the traffic stop was a sudden and unusual stressful event, and concluded the physical exertion required to secure the load, combined with the mental stressors, primarily caused the heart attack and resulting death. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe

---

[1] Both physicians agreed there was no way to know with absolute certainty that Employee had a heart attack as no autopsy was conducted. Both indicated, however, that it was "most likely" or "probable" that Employee's death was caused by was a sudden cardiac event, and there is no proof in the record that weighs against that probability. "The law does not require absolute certainty on the part of the medical expert and allows for the existence of some doubt." *Lurz v. International Paper Co.*, No. 2015-02-0462, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17-18 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018). Furthermore, a family can still qualify for benefits due to an employee's fatal heart attack even if an autopsy is not conducted. *See, e.g.*, *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 134 (Tenn. 2001). The family in the instant case chose to have Employee's body cremated.

5

the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

Prior to the passage of the 2013 Workers' Compensation Reform Act ("Reform Act"), Tennessee courts generally categorized claims for work-related heart attacks into two groups: (1) those in which the heart attack is precipitated by physical exertion or strain; and (2) those in which the heart attack is triggered by mental stress, tension, or some type of emotional upheaval. *Clark v. Nashville Mach. Elevator Co.*, 129 S.W.3d 42, 47 (Tenn. 2004). Regarding the first category, heart attacks caused by physical exertion or strain at work, the Tennessee Supreme Court has held that "no extraordinary exertion or unusual physical strain need be established in order to obtain a recovery." *Bacon v. Sevier Cty.*, 808 S.W.2d 46, 50 (Tenn. 1991). In such cases, the employee need only prove the heart attack was "precipitated by the physical activity or exertion or physical strain of the employee's job," even in cases where the employee suffered from one or more relevant pre-existing conditions. *Id.*

Pre-reform case law also established parameters to address a heart attack arising from mental stress, stating "the heart attack must be immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions." *Id.* at 52. Although excessive and unexpected stress and worry that can be attributed to the employment may justify an award of benefits, *see Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997), "the ordinary stress of one's occupation does not because '[e]motional stress, to some degree, accompanies the performance of any contract of employment,'" *Cunningham*, 46 S.W.3d at 136-37 (quoting *Allied Chem. Corp. v. Wells*, 578 S.W.2d 369, 373 (Tenn. 1979)). In other words, "[n]ormal ups and downs are part of any employment relationship and . . . do not justify finding an 'accidental injury' for purposes of worker[s]' compensation law." *Bacon*, 808 S.W.2d at 53. "Accordingly, the well-settled rule in Tennessee is that physical or mental injuries caused by worry, anxiety, or emotional stress of a general nature or ordinary stress associated with an employee's occupation are not compensable." *Brown v. Zurich Am. Ins. Co.*, No. E2016-00237-SC-R3-WC, 2017 Tenn. LEXIS 267, at *7 (Tenn. Workers' Comp. Panel Apr. 21, 2017).

We previously addressed the impact of the Reform Act on heart attack cases in *Mitchell v. Bunge North America*, No. 2016-08-1131, 2019 TN Work. Comp. App. Bd. LEXIS 15 (Tenn. Workers' Comp. App. Bd. Apr. 16, 2019), as follows:

> [T]he Reform Act of 2013 changed the definition of a compensable injury from that applicable when *Bacon* was decided. As previously noted, under the Reform Act, an injury must now "arise *primarily* out of and in the course and scope of employment." Thus, while it still makes no difference that the

6

employee, prior to the heart attack, suffered from pre-existing heart disease or that the heart attack was precipitated by the usual physical strain of the employee's job, the proof must now establish the heart attack arose *primarily* from the employment considering all causes. The Reform Act is clear that an injury "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment."

*Id.* at *16-17 (emphasis in original) (internal citations omitted).

In addition, we noted that the standards for addressing the impact of mental stressors in heart attack cases remained the same post-reform, explaining:

[T]he proof must establish that the heart attack resulted from a stressful incident of abnormal or unusual proportions arising primarily out of the employment rather than the day-to-day mental stresses and tensions experienced by an employee as part of his or her job.

As this discussion illustrates, and contrary to Claimant's position, evidence of an event precipitating a heart attack is required in both categories of heart attack claims. The difference lies in the type of event that precipitates the attack. While heart attacks involving physical stressors require physical activity or exertion which may be ordinary in nature, heart attacks involving emotional stressors require abnormal or unusual incidents.

*Id.* at *18-19 (footnote omitted).[2]

In *Mitchell*, the claimant had offered several different theories addressing the primary cause of the employee's fatal heart attack, including physical exertion, mental stressors, and environmental exposures. *Id.* at *3. Here, however, Claimant's expert testified it was the *conglomeration* of work-related physical exertion and unusual mental stressors that primarily caused Employee's heart attack and death. Thus, the ultimate issue is whether the preponderance of the evidence supports the trial court's determination that Dr. Kanagasundram's opinion as to the multiple factors supporting his medical causation opinion offered the more probable explanation.

Employer initially contended in its appeal brief that the trial court should have accepted the testimony of Dr. Arcot over that of Dr. Kanagasundram. During oral

_____

[2] In *Mitchell*, the claimant relied on pre-reform cases for the proposition that no extraordinary physical exertion is required to establish medical causation. We agreed that when a heart attack arises primarily from physical exertion or strain, ordinary physical exertion or strain was sufficient to establish causation. *Mitchell*, at *18 n.3.

argument, Employer further argued that, regardless of Dr. Arcot's testimony, the mental stress of being stopped by a law enforcement officer was not sufficiently unusual or abnormal in the context of Employee's work as a professional driver to qualify as a causative factor under Tennessee law. In other words, Employer submits that, as a truck driver, Employee should reasonably have expected to encounter law enforcement in the course and scope of his work and, therefore, that event cannot qualify under Tennessee law as "unusual" or "abnormal." Hence, if the mental stress element of the case is nullified and there is no expert medical opinion indicating that the physical exertion alone was the primary cause of the heart attack, Claimant's cause of action must fail.

In support of this argument, Employer points to *Reeser v. Yellow Freight Systems*, a pre-reform case in which a truck driver became severely disabled from a stroke he suffered when he was required to drive in treacherous conditions following an ice storm. *Reeser*, 938 S.W.2d at 691.[3] At the trial in *Reeser*, the employee presented medical proof that the driving conditions and the stress of driving "could have" caused the stroke, which was acceptable medical proof at the time to establish medical causation and support an award of benefits. *Id.* The employee also presented testimony from several witnesses regarding the "hazardous," "horrendous," and "terrible" driving conditions on the date of the accident, which they stated were "unusually stressful." *Id.* at 692-93.[4] Benefits were awarded by the trial court, and the Supreme Court concluded there was "ample evidence in the record to support the trial court's finding that the employee was performing the obligations of his employment in an unusual and abnormally stressful set of circumstances." *Id.* at 693.

Here, Employer argues Claimant did not meet her burden of proof as to the mental stress element because she failed to affirmatively show the traffic stop was abnormal or unusual for a commercial truck driver. In response, Claimant argued that just because an event may be foreseeable, that does not mean it cannot also be abnormal or unusual. In other words, commercial drivers may reasonably expect, at some point in their driving career, to be stopped by law enforcement. That does not mean, however, that such an event cannot also cause unusual or abnormal mental stress.

---

[3] Employer filed a Notice of Supplemental Authority following oral arguments, pursuant to Tennessee Rule of Appellate Procedure 27(d). Claimant filed a Motion to Strike the Notice, properly noting that the Tennessee Rules of Appellate Procedure do not apply to the Workers' Compensation Appeals Board, but also contending the relevant rationale discussed in the supplemental case law was not argued at the trial. We deny Claimant's Motion to Strike, as all the cases provided by Employer were cited previously in the *Mitchell* case, which was discussed extensively by both parties at trial, and we are aware of no authority supporting the proposition that a litigant waives its right to rely on any particular precedent on appeal unless it previously cited such cases to the trial court.

[4] The employee was left unable to speak by his stroke and was thus unable to testify regarding his assessment of the driving conditions. *Id.* at 691.

8

We conclude Employer's position disregards Deputy Poteet's direct testimony concerning Employee's demeanor during the traffic stop. Unlike in *Reeser,* where other employees merely suggested the impact of treacherous driving conditions on an employee's mental status, Deputy Poteet offered eyewitness testimony as to Employee's nervousness and anxiety at the time of the traffic stop. Moreover, Mr. Dabbs testified Employee had never been written up and had no indications in his file of poor performance. Mr. Dabbs also testified that he could think of no other instances of employees being pulled over to secure their truckload in the recent past, and that it was not a job duty of Employee to load his truck. Thus, there was no evidence rebutting Deputy Poteet's assessment of Employee's mental status at the time of the stop, and there is unrefuted evidence that the events preceding Employee's heart attack were "considerably out of his routine." *See Myers v. "Classic Express,"* No. 03S01-9710-CH-00126, 1998 Tenn. LEXIS 582, at *10 (Tenn. Workers' Comp. Panel Oct. 16, 1998) (awarding death benefits when the employee, a commercial truck driver, suffered a heart attack the day after having a fuel tank rupture). Furthermore, Dr. Kanagasundram reviewed the deposition of Deputy Poteet and relied on it in his determination that the traffic stop would be "quite a stressful event" that contributed to Employee's "catastrophic cardiac event" and subsequent death.

In short, the trial court was provided two countervailing expert opinions as to the primary cause of Employee's heart attack, and it determined Dr. Kanagasundram's opinion offered the more probable explanation. We cannot conclude that finding was in error.

Considering the totality of the circumstances, the proof in the record supports the trial court's award of benefits. Determinations by a court as to what constitutes an abnormal or unusual mental stressor are fact specific. Previously, benefits have been awarded to a security guard's estate when a potential shoplifter made threats on his life, as the court reasoned that, although confrontation with shoplifters was an ordinary stressor for a security guard, a death threat was not. *Cunningham*, 46 S.W.3d at 137-38. In another case, a court awarded a truck driver's widow benefits when her husband suffered a fatal heart attack after driving a new route. *Russell v. Ryder Integrated Logistics*, No. M1998-00195-WC-R3-CV, 1999 Tenn. LEXIS 676, at *6-7 (Tenn. Workers' Comp. Panel Dec. 20, 1999). The court determined that the stress of the combination of an unfamiliar route, mechanical difficulties, heavier traffic, and limited sleep was unusual enough to be considered the cause of the heart attack. *Id.* Finally, in another case, the court awarded benefits when a teacher suffered a heart attack after having to discipline a student several times, ultimately placing her hand on the student's shoulder and telling him to "act right." *Cary v. Local Gov't Workers' Comp. Fund*, No. W2003-02339-WC-R3-CV, 2004 Tenn. LEXIS 838, at *10-11 (Tenn. Workers' Comp. Panel Sept. 22, 2004.)

Conversely, benefits were denied to a police detective who suffered a heart attack after spending three days "on call" investigating a rape case, an aggravated assault, and a report of child abuse, *Lane v. City of Cookeville*, No. M2006-00871-WC-R3-CV, 2007 Tenn. LEXIS 634, at *3-4 (Tenn. Workers' Comp. Panel Aug. 9, 2007); to a salesperson

who was told he needed to increase sales, *Brown*, 2017 Tenn. LEXIS 267, at *8; and to a state employee who suffered a heart attack following a week of preparations for a visit from the Vice President of the United States, *Adams v. State*, S/C No. 01-S-01-9101-BC-00001, 1992 Tenn. LEXIS 24, at *8-9 (Tenn. Jan. 6, 1992).

In sum, although it might be foreseeable that a professional truck driver could have an interaction with law enforcement in the course and scope of his job, nothing in the record suggests that this particular stop was merely an "ordinary stress" of Employee's job as a truck driver. Thus, although reasonable minds may differ as to whether a traffic stop for a truck driver is abnormal or unusual, we conclude the evidence does not preponderate against the court's determination that Employee suffered a fatal heart attack primarily caused by the emotional stress of the traffic stop combined with the physical exertion associated with climbing into the trailer to secure the load.[5]

## Conclusion

For the foregoing reasons, we affirm the trial court's compensation order and certify it as final. Costs on appeal are taxed to Employer.

---

[5] Employer filed a Motion for Stay, requesting we postpone our decision in this case until the Supreme Court renders its opinion in *Edwards v. Peoplease*, No. 2020-07-0656, 2024 TN Wrk. Comp. App. Bd. LEXIS 23 (Tenn. Workers' Comp. App. Bd. July 2, 2024). In *Edwards*, the Supreme Court has indicated it will address the appropriate standard of review for expert medical proof presented by deposition, as opposed to expert proof presented live at trial. However, unlike most other appellate tribunals in this state, the Workers' Compensation Appeals Board has deadlines for the issuance of its opinions dictated by statute. *See* Tenn. Code Ann. § 50-6-217(a) (2024). Thus, we are constrained to issue this opinion by a date certain. Furthermore, Employer's primary argument on appeal is based on factual evidence concerning the traffic stop and not on the proper standard of review for competing expert medical proof. Finally, we conclude that the result we have reached would be the same irrespective of the appropriate standard of review for expert medical proof. Therefore, the motion is denied.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Darlene Taylor as Surviving Spouse of Darrell Taylor | ) ) ) | Docket No. 2023-07-5405 |
| | ) | State File No. 860327-2023 |
| v. | ) ) | |
| Dale's Recycling, et al. | ) ) ) | |
| Appeal from the Court of Workers' Compensation Claims | ) ) | Heard June 13, 2025, in Murfreesboro, TN |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of July, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Richard R. Clark, Jr. | | | | X | rclark@eraclides.com ewhite@eraclides.com |
| Jonathan May | | | | X | jmay@forthepeople.com jvavak@forthepeople.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

_Q. Yearwood_

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov