

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Clarence Bass, | ) | Docket No. 2016-06-1038 |
| Employee, | ) | |
| v. | ) | State File No. 59924-2014 |
| The Home Depot U.S.A., Inc., | ) | |
| Employer, | ) | Judge Kenneth M. Switzer |
| And | ) | |
| New Hampshire Insurance Co., | ) | |
| Carrier. | ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on January 10, 2017, for a Compensation Hearing. The central legal issue is the compensability of Mr. Bass' claim and specifically whether the requisite causal link exists between an alleged injury at work and Mr. Bass' resulting need for two surgical procedures. The authorized treating physician and an independent medical examiner reached different conclusions on these and other issues. For the reasons set forth below, the Court holds the independent medical examiner's opinion failed to overcome the statutory presumption of correctness regarding causation afforded to the authorized treating physician's opinion. Thus, the Court denies Mr. Bass' petition for benefits.

### History of Claim

Mr. Bass worked at The Home Depot in Nashville as a lot associate. He sustained an injury at work on August 1, 2014, while moving shopping carts. The "flap" beneath a cart handle flipped over and struck him on the right hand and wrist. Mr. Bass clarified the part that hit him was metal and not the plastic flap where small children ride in the cart. He had no problems with his hand or wrist before the work incident.

Mr. Bass selected Dr. Philip Coogan as the authorized treating physician and saw him ten times from February through December 2015. Dr. Coogan is board-certified in hand surgery as well as orthopedic and plastic surgery. He testified Mr. Bass became

1

injured "ten months previously, he had been moving some shopping carts and the *plastic flap* that apparently covers the area children put their legs through the cart flipped over and hit him on the dorsum of the wrist." (Emphasis added). Dr. Coogan further testified the date of injury was April 2014 but later corrected himself, noting he first saw Mr. Bass "seven months, something like that, after the events that – on-the-job events." After diagnosis and treatment, Dr. Coogan recommended a carpal tunnel release and a proximal row carpectomy, which he performed on July 24. The Home Depot denied the claim before the surgery based on communication with Dr. Coogan indicating that his treatment no longer related to the work injury. Before undergoing surgery, Mr. Bass informed his supervisor at The Home Depot regarding the denial. Dr. Coogan determined Mr. Bass reached maximum medical improvement on November 25 and assessed an eight-percent impairment rating to the body as a whole.

As for causation, Dr. Coogan concluded the injury and treatment were unrelated to the work incident. He described the mechanism of injury as "fairly low-energy." Dr. Coogan agreed in a causation letter to the adjuster and in his deposition testimony that, within a reasonable degree of medical certainty, Mr. Bass did not sustain an injury by accident that necessitated the carpal tunnel surgery. He further stated the proximal row carpectomy was unrelated to the work injury. According to Dr. Coogan, Mr. Bass "had the same diagnosis before the injury as he had after the injury. It was posttraumatic instability and arthritis in his wrist." He explained he generally considers three factors when determining causation: the "degree of violence of the event, the time duration of the event and the degree of anatomic abnormality." However, his testimony focused almost entirely on the first factor only. Dr. Coogan said it is "very common for people who have posttraumatic arthritis to have events that sort of bring their symptoms to their attention." He also testified regarding causation as follows:

Q:     And if he [Mr. Bass] – let's say he did incorrectly give you a history and it had actually been some kind of metal portion of the shopping cart, . . . *would that affect your opinion?*

A:     *Not significantly.*

Q:     So what I think I'm hearing is just that the carpal tunnel is not related to the work injury; is that correct?

A:     That's correct.

Q:     And that the posttraumatic instability and arthritis is either not related or modestly related to the work injury?

A:     That's right.

Q:     Would that be less than 50 percent?

A:     Yes.

Q:     Okay.  And have all of your answers today been provided within a reasonable degree of medical certainty?

A:     Yes.

(Ex. 2 at 30)(Emphasis added).  On cross-examination, Dr. Coogan acknowledged Mr. Bass' different version of how he became injured but did not alter his causation opinion even if that version proved to be correct.

Turning now to the independent medical examiner, Dr. Landsberg is a board-certified orthopedic surgeon who examined Mr. Bass once.  In his report, Dr. Landsberg summarized Mr. Bass' medical history and treatment and reviewed the diagnostic reports.  He testified that Mr. Bass told him the metal part underneath the cart, and not the plastic flap, hit his hand, which is heavier and made out of a more rigid material.  Dr. Landsberg generally agreed with Dr. Coogan's diagnosis and treatment.  As for causation, he testified the "primary cause" of Mr. Bass' surgery was "pain and swelling and stiffness" from the work injury.  He also stated, "based on that history, with the symptoms starting right after the injury, with that swelling, that the carpal tunnel syndrome was secondary to the work injury and leading to the surgery."  (Ex. 3 at 27.)  As for the primary cause for the proximal row carpectomy, Dr. Landsberg stated Mr. Bass "took a blow to the wrist . . . He developed pain and more stiffness and swelling – or stiffness and swelling.  And had it not been for that, he probably wouldn't have had the surgery."  *Id.* at 27-28.  Dr. Landsberg's report reads, "Based on this history, his problem was at least aggravated and advanced by the work injury.  This is within a reasonable degree of medical certainty.  All his symptoms came on after the work injury."  Dr. Landsberg also assigned an impairment rating of eleven percent to the body as a whole.

*Post-surgery Return to Work*

Mr. Bass returned to work on September 6.  He testified The Home Depot initially assigned him to light-duty in the garden center but later returned him to full-duty lot attendant until his termination in May 2016.  The Home Depot hired him part-time at $8.50 per hour.  Per the wage statement, he worked reduced hours during his orientation period.

Michael Brown, the store manager, testified regarding the incidents precipitating Mr. Bass' termination.  Specifically, he wrote Mr. Bass disciplinary infractions three times.  The first notice documented three absences and one late arrival by ten minutes; the second notice stated Mr. Bass disregarded customers' "loading needs" on two

3

separate occasions; and the third notice indicated Mr. Bass left the store with "product" and placed it in his vehicle. On cross-examination, Mr. Brown nonetheless agreed Mr. Bass was a "good" employee. The Home Depot's disciplinary policy is "progressive." Per Mr. Brown, Mr. Bass underwent approximately two weeks' orientation about company policies, including one day of instructor-led training followed by computer-based instruction.

To explain the write-ups, Mr. Bass testified he called in sick on the days he was absent and it was not unusual to be late once over the course of two years' time. He acknowledged disregarding a customer whom he stated was "talking out of line," but asked his supervisor to find another worker to help the customer. As for removing "product," Mr. Bass explained a vendor in the garden center told him he could have a few tomato plants, which were non-saleable. His efforts to find another job since the termination were unsuccessful.

*Requested Relief*

Mr. Bass argued he sustained a compensable injury. He seeks medical benefits and in particular reimbursement of unpaid medical bills. He presented copies of these bills to Dr. Landsberg, who testified they were reasonable and necessary. He also seeks temporary total disability benefits from the date of surgery until his return to work, July 24 through September 6, totaling six weeks and three days. He additionally asks for permanent partial disability benefits in accordance with Dr. Landsberg's eleven-percent rating. As for the correct compensation rate, Mr. Bass argued the Court should exclude his reduced wages for the time he was in orientation. Finally, he asks for an increase of his award under Tennessee Code Annotated section 50-6-207(3)(b)(i)-(ii) (2016) and contends The Home Depot fired him without cause.

In response, The Home Depot argued Mr. Bass' injury is not compensable, but in the event the Court finds otherwise, it should adopt Dr. Coogan's eight-percent rating and calculate the award including all sums on the wage statement. The Home Depot additionally argued it terminated Mr. Bass for cause, so that the statutory multipliers are inapplicable under Tennessee Code Annotated section 50-6-207(3)(D)(ii).

**Findings of Fact and Conclusions of Law**

Mr. Bass, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a compensation hearing, Mr. Bass must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). In

4

addition, the opinion of the authorized treating physician "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E).

*Causation*

Mr. Bass' claim involves an incident that he alleged caused injuries and the resulting need for two surgical procedures performed concurrently: carpal tunnel release and proximal row carpectomy. The definitions of "injury" are determinative.

Under the Workers' Compensation Law, an injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment[.]" Tenn. Code Ann. § 50-6-102(14). For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). As for alleged aggravations, "The pertinent statute makes clear that an aggravation of a pre-existing condition is a compensable injury when 'it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.'" *Miller v. Lowe's Home Centers, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *12 (Oct. 21, 2015), *citing* Tenn. Code Ann. § 50-6-102(14)(A) (2015). Mr. Bass can satisfy the burden of proving a compensable aggravation if: 1) there is expert medical proof that the work accident "contributed more than fifty percent (50%)" in causing the aggravation, and 2) the work accident was the cause of the aggravation "more likely than not considering all causes." *Miller,* at *15, *citing* Tenn. Code Ann. § 50-6-102(14)(B)-(C).

The Court observed Mr. Bass' demeanor during the hearing and finds him credible. Thus, the Court finds he injured his hand and wrist when the metal part of a shopping cart struck him on August 1, 2014. The more difficult question is whether that incident caused his carpal tunnel syndrome and aggravated his preexisting arthritis, resulting in the need for treatment and surgery.

The medical experts differ. In these situations, the Appeals Board affirmed longstanding Tennessee law when it held, "A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions." *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015) (internal citations omitted). In evaluating conflicting expert testimony, this Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.*

5

Applying these factors, the Court initially finds both experts bear similar qualifications, so that this factor favors neither expert. With regard to the circumstances of their evaluation, Dr. Coogan saw Mr. Bass multiple times over several months, while Dr. Landsberg examined him once in anticipation of litigation. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991). Thus, this factor favors Dr. Coogan. It appears both physicians relied upon the same diagnostic testing to reach their conclusions, but they ascribed differing mechanisms of injury.

For his part, Dr. Coogan identified three considerations – the violence of the event, the time duration of the event and the degree of anatomic abnormality. Dr. Coogan clearly based his initial conclusion on the incorrect belief that the event in question was the impact of a plastic flap on Mr. Bass' hand and wrist, a "fairly low-energy" event. Importantly, however, he testified that even if the event were more severe than he thought, it would "not significantly" alter his opinion. Dr. Coogan did not address whether the event aggravated the pre-existing injury; although there is lengthy discussion concerning the effect of an injury on his pre-existing arthritis, the Court cannot find a direct question on aggravation in Dr. Coogan's testimony. He nonetheless firmly stated he cannot conclude within a "reasonable degree of medical certainty" that the work accident was the primary cause of the need for Mr. Bass' carpal tunnel release or proximal row carpectomy.

Dr. Landsberg reached a different causation conclusion, basing his opinion largely on a history of a more violent event than Dr. Coogan noted. Specifically, Dr. Landsberg stated the "primary cause" of Mr. Bass' surgery was "pain and swelling and stiffness" from the work injury. He wrote in his report, "based on his history, his problem was at least aggravated and advanced by the work injury." However, nowhere did Dr. Landsberg find the incident contributed more than fifty percent in causing the disablement, considering all causes, as the statute requires. Moreover, Dr. Landsberg's report concluded in relevant part, "[B]ased on his history, his problem was at least aggravated and advanced by the work injury. This is within a reasonable degree of medical certainty. *All his symptoms came on after the work injury.*" (Emphasis added.) Simply because Mr. Bass started having problems with his hand and wrist after the incident does not necessarily mean the work incident caused the carpal tunnel syndrome and the aggravation of the pre-existing arthritis.

Thus, the Court holds Dr. Landsberg's opinion is insufficient to overcome the presumption of correctness afforded to Dr. Coogan's opinion by a preponderance of the evidence. Mr. Bass failed to establish by a preponderance of the evidence that he sustained an injury by accident arising primarily out of and in the course and scope of employment or an aggravation of a pre-existing condition arising primarily out of and in

6

the course and scope of employment. His claim for workers' compensation benefits is denied.

## Alternative Findings

Solely in the event that an appellate body finds error in the compensability holding, the Court makes the following alternative findings for the sake of judicial economy. *See Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-138 (Tenn. 2001). ("The trial court should . . . hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.")

The Court holds in the alternative that the correct impairment rating is eight percent to the body as a whole, per Dr. Coogan's conclusion. His rating is presumed correct; *see* Tenn. Code Ann. § 50-6-204(k)(7). Nothing within Dr. Landsberg's testimony or report indicates that Dr. Coogan's rating is incorrect in method or in application of the American Medical Association Guides. The two experts merely reached different conclusions. Thus, the presumption of correctness must stand. Further, in accordance with the opinions of both experts, the surgical procedures were medically necessary. The medical bills relative to the procedures were reasonable and necessary. Additionally, Mr. Bass' compensation rate is $282.63, excluding the period when he earned less while training. Finally, The Home Depot terminated Mr. Bass for cause, so that his award of permanent partial disability benefits is not subject to application of the enhancement factors. *See* Tenn. Code Ann. § 50-6-207(3)(D)(ii).

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Bass' claim is denied on the ground of compensability.

2. The Home Depot shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016).

3. The Home Depot shall file an SD-1 within ten days of entry of this Judgment.

**ENTERED this the 25th day of January, 2017.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

7

# APPENDIX

## EVIDENCE
1. Affidavit
2. Deposition of Dr. Landsberg
3. Deposition of Dr. Coogan
4. Wage statement
5. Photograph
6. Associate statement
7. Notice of Denial
8. Progressive Disciplinary Notices
9. Performance and Development Summaries

## TECHNICAL RECORD
1. Petition for Benefit Determination
2. Employee's Pre-Mediation Position Statement
3. Dispute Certification Notice
4. Petition for Benefit Determination
5. Employer's Pre-Mediation Position Statement
6. Employee's Pre-Hearing Brief
7. Witness and Exhibit List (Employee)
8. Witness and Exhibit List (Employer)
9. Dispute Certification Notice
10. Defendant's Trial Brief

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of January, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Jill Draughon, Employee's Attorney | | | X | JDraughon@hughesandcoleman.com |
| Kenny Veit, Employer's Attorney | | | X | Kenny.veit@leitnerfirm.com |

**Penny Shrum, Clerk of Court**
wc.courtclerk@tn.gov