FILED

March 10, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 3:05 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **ESSIE JOHNSON,** | ) | **Docket No.: 2015-07-0266** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FIRST UNITED METHODIST** | ) | **State File No.: 85880-2014** |
| **CHURCH,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **TRAVELERS,** | ) | **Judge Amber E. Luttrell** |
| **Insurance Carrier.** | ) | |
| | ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on February 17, 2017, for a Compensation Hearing. The central legal issue is whether Ms. Johnson established by a preponderance of the evidence that her alleged feet injuries arose primarily out of and in the course and scope of her employment with First United Methodist Church (FUMC). For the reasons set forth below, the Court holds Ms. Johnson did not and thus, the Court denies Ms. Johnson's claim for workers' compensation benefits.

### History of Claim

Ms. Johnson worked for FUMC in Jackson, Tennessee as a custodian. Her job duties included, but were not limited to, emptying trash, vacuuming, dusting, mopping, cleaning bathrooms, and ironing tablecloths for church functions. Ms. Johnson alleged a work-related injury to her feet on October 21, 2014, from standing and ironing tablecloths. She testified she experienced pain over time, which traveled up her body from "pivoting on her feet." According to Ms. Johnson, she notified the operations manager and her supervisor, Tricia Odom, about her pain, and Ms. Odom purchased a rubber mat for her to stand on, but did not offer to send her to a physician. They also discussed alternative ways for Ms. Johnson to iron the tablecloths. Ms. Johnson testified she had no problems with her feet prior to performing this activity.

1

Ms. Johnson testified she sought unauthorized treatment for her injury to her feet with the following providers: Durham Chiropractic, Dr. Jerome Cawthon, and Dr. Earl Stewart. Ms. Johnson also saw Dr. Jason Hutchison for a one-time authorized visit. The parties introduced medical records from these providers into evidence at the hearing.

Medical records from Durham Chiropractic between July 2013 and May 2014 indicated Ms. Johnson sought chiropractic treatment primarily for her cervical, thoracic, and lumbar spine. (Ex. 1 at 13-39.) There is no mention in Dr. Durham's records of any treatment for Ms. Johnson's feet or of a work injury.

Ms. Johnson next sought treatment with a podiatrist, Dr. Jerome Cawthon, who diagnosed bilateral tarsal tunnel syndrome. *Id.* at 40. Dr. Cawthon did not provide a causation opinion or mention Ms. Johnson's work activities at FUMC in his record.

After seeing Dr. Cawthon, the parties agreed Ms. Johnson and Ms. Odom discussed Ms. Johnson's foot complaints, and Ms. Odom offered a panel of physicians, which included Dr. Cawthon. (Ex. 4.) Ms. Odom testified Dr. Cawthon refused to see Ms. Johnson under workers' compensation; therefore, FUMC contacted other physicians on the panel until Dr. Jason Hutchison, a board-certified orthopedic surgeon, agreed to see Ms. Johnson.

Ms. Johnson saw Dr. Hutchison and provided a history of pain in her legs and numbness in her feet after she started ironing tablecloths in 2012. (Ex. 1 at 42.) She did not describe an acute injury. However, she stated moving from side to side and twisting caused her pain. Dr. Hutchison reviewed Ms. Johnson's prior medical records and noted Dr. Cawthon previously diagnosed bilateral tarsal tunnel syndrome in October 2014. Following an exam, Dr. Hutchison also diagnosed tarsal tunnel syndrome. Concerning causation, Dr. Hutchison opined:

> While Ms. Johnson's occupation[al] ironing may exacerbate her underlying symptomatology, it is not the proximate cause of her problem. Specifically, the tarsal tunnel syndrome, she has two risk factors independent of her job. To my knowledge, there is no occupational-related cause of tarsal tunnel. She has diabetes and pes planus, both of which are known risk factors for tarsal tunnel. Both of these are pre-existing or non work-related risk factors.

*Id.*

Dr. Hutchison further opined, "this is not directly a work-related injury." He recommended Ms. Johnson seek further care for her ailments under her private health insurance. *Id.* at 43. Based on Dr. Hutchison's opinion, FUMC denied Ms. Johnson's workers' compensation claim. (Ex. 3.)

2

Ms. Johnson subsequently sought treatment from Dr. Earl Stewart, her personal physician, in 2016. Dr. Stewart's records revealed Ms. Johnson saw him for a variety of conditions throughout 2016.[1] Concerning Ms. Johnson's feet, Dr. Stewart mentioned "tarsal tunnel" in two visits in 2016 in the "Review of Systems" section of his report. However, there is no mention of Ms. Johnson's alleged work-injury at FUMC or a causation opinion from Dr. Stewart. Ms. Johnson acknowledged no physician took her off work for her tarsal tunnel syndrome.

Ms. Odom testified she asked Ms. Johnson to iron tablecloths on occasion for events in their banquet facility. Ms. Odom stated that ironing was not required on a daily basis, and there was never a quota or deadline for ironing the tablecloths. Ms. Odom testified Ms. Johnson complained in 2013 of trouble in her knees while ironing. She stated Ms. Johnson first complained to her about her feet after Ms. Johnson saw Dr. Cawthon. FUMC offered Ms. Johnson a panel, and she ultimately saw Dr. Hutchison.

In July 2015, FUMC sent Ms. Johnson to Nova Medical Center in Memphis, Tennessee, for a fit-for-duty exam. (Ex. 1 at 45.) Ms. Odom testified FUMC decided it was in Ms. Johnson's best interest to have an independent exam to determine if she could perform the physical duties of her job. Nova indicated Ms. Johnson was disqualified from performing her essential job duties due to "cardiovascular, blood pressure, and other." Following the Nova evaluation, FUMC terminated Ms. Johnson's employment. Since her termination from FUMC, Ms. Johnson testified she has not worked anywhere and that she continues to have pain.

Mr. Glynn Graves also testified on behalf of FUMC. Mr. Graves works in facilities and maintenance for FUMC. In the course of a workday, Mr. Graves saw Ms. Johnson five to ten times. He testified they talked regularly and complained to each other about their arthritic knees. Ms. Johnson never complained to him of any problems with her feet or a work injury to her feet.

*Requested Relief*

Ms. Johnson argued she sustained a compensable injury to her feet. She seeks medical benefits and temporary disability benefits. Ms. Johnson contended Drs. Cawthon and Stewart diagnosed tarsal tunnel syndrome and argued Dr. Hutchison acknowledged her ironing activities "may exacerbate her underlying symptomatology." She did not present any evidence of temporary total disability or permanent impairment and did not ask for permanent partial disability benefits.

In response, FUMC argued Ms. Johnson's claim is not compensable. It contended there is no medical proof establishing her foot condition arose primarily out of and in the

---

[1] The Court notes Dr. Stewart's records were handwritten, difficult to read, and illegible in parts.

3

course and scope of her employment. To the contrary, FUMC asserted the only medical opinion in this case is from Dr. Hutchison, who concluded Ms. Johnson's foot condition was not work-related. In the event the Court holds otherwise, FUMC additionally argued Ms. Johnson offered no proof of temporary total disability or permanent partial disability.

## Findings of Fact and Conclusions of Law

Ms. Johnson, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a Compensation Hearing, Ms. Johnson must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016).

To prove a compensable injury, Ms. Johnson must show that her alleged injury arose primarily out of and in the course and scope of her employment. *Id.* at § 50-6-102(14). To do so, she must show an incident, or specific set of incidents, identifiable by time and place of occurrence, caused her injury. *Id.* at § 50-6-102(14)(A). Further, she must show, "to a reasonable degree of medical certainty that [the employment] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C).

Applying these principles to the facts of this case, the Court holds Ms. Johnson failed to satisfy her burden of proving her tarsal tunnel condition arose primarily out of and in the course and scope of her employment. Specifically, there is no medical proof to establish that Ms. Johnson's ironing duties contributed more than fifty percent in causing her tarsal tunnel condition considering all causes.

While the medical record from Dr. Cawthon supports a diagnosis of bilateral tarsal tunnel, he gave no opinion on medical causation for that condition. The records in evidence from Durham Chiropractic do not mention tarsal tunnel syndrome. Dr. Stewart's handwritten notes appear to mention tarsal tunnel in the history section on two visits; however, there is no evidence Dr. Stewart diagnosed the condition or causally related it to Ms. Johnson's employment at FUMC. The Court finds the only medical proof in evidence addressing medical causation is from Dr. Hutchison. Upon taking a history from Ms. Johnson, reviewing her prior medical records, and examining her, Dr. Hutchison opined her tarsal tunnel was *not* caused by a work-related injury. Rather, he opined her condition was causally related to her pre-existing diabetes and pes plenus.

The Court recognizes Ms. Johnson disputes Dr. Hutchison's conclusions; however, Ms. Johnson's disagreement with the physician's opinion, while genuine, is legally insufficient to refute his conclusions. Neither Ms. Johnson nor the Court has the medical qualifications to revise the doctor's medical opinion. As our Appeals Board

4

observed, "Judges are not well-suited to second guess a medical expert's treatment, recommendations, and or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Aug. 18, 2015).

Accordingly, this Court holds, as a matter of law, Ms. Johnson failed to establish by a preponderance of the evidence that she sustained an injury primarily arising out of and in the course and scope of employment. Her claim for workers' compensation benefits is denied.

## Alternative Findings

Solely in the event that an appellate body finds error in the compensability holding, the Court makes the following alternative findings for the sake of judicial economy. *See Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-138 (Tenn. 2001). ("The trial court should . . . hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.")

The Court holds in the alternative that Ms. Johnson is entitled to medical benefits pursuant to Tennessee Code Annotated section 50-6-204. Ms. Johnson did not introduce any medical bills into evidence; thus, she is not entitled to payment of past medicals. Finally, the Court holds Ms. Johnson did not introduce any evidence of temporary disability or permanent partial disability; thus, she is not entitled to these.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Johnson's claim is denied on the ground of compensability.

2. FUMC shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016) within five days of entry of this order, for execution may issue as necessary.

3. FUMC shall file an SD-1 within ten days of entry of this Judgment.

**ENTERED this the _10_th day of March, 2017.**

_____
**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

5

# APPENDIX

## EVIDENCE

1. Medical Records (collective exhibit)
2. Separation Notice
3. Notice of Denial
4. Panel of Physicians
5. Denial Letter
6. Job Description
7. Dr. Stewart letter

## TECHNICAL RECORD

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Petition for Benefit Determination (post-discovery)
4. Dispute Certification Notice (post-discovery)
5. Employer's witness list
6. Employer's pre-trial brief
7. Expedited Hearing Order Denying Benefits
8. Order Denying Employer's Motion for Summary Judgment
9. Order Denying Employer's Motion to Compel Discovery
10. Order on Employer's Discovery Motions
11. Order Denying Employer's Motion to Dismiss for Failure to Prosecute
12. Request for Expedited Hearing
13. Employer's Position Statement
14. Employer's Witness List

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the _10th_ day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Essie Johnson, Self-Represented Employee | X | | | 33 Denmark Jackson Road Denmark, Tennessee 38391 |
| Paul T. Nicks, Employer's Counsel | | | X | pnicks@travelers.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7