**FILED**
**Aug 28, 2020**
**10:43 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **ELPIDIO HERNANDEZ,** | ) | **Docket Number: 2019-02-0046** |
| **Employee,** | ) | |
| **v.** | ) | |
| **JONES COMPANY LTD.,** | ) | **State File Number: 92324-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **GREAT AMERICAN ALLIANCE** | ) | **Judge Brian K. Addington** |
| **INSURANCE COMPANY,** | ) | |
| **Carrier.** | ) | |

## COMPENSATION ORDER

This case came before the Court for a Compensation Hearing on August 21, 2020. The only issue was whether Elpidio Hernandez's claim is barred by his willful failure to use a safety device. Because the testimony revealed Jones instituted and enforced a safety rule which Mr. Hernandez willfully violated, the Court bars his claim for his willful failure to use a safety device.

### Claim History

Mr. Hernandez worked for Jones using a cutting machine that has a guard. The cutting blades are approximately twenty-seven inches from the edge of the guard. On December 1, 2018, Mr. Hernandez reached his hand past the guard to remove clogged fabric, and the machine cut off all four fingers of his right hand.

Jones argued that he did this despite its comprehensive safety plan. As part of its production operations, Jones required employees to watch a video and answer questions regarding safety rules. The video and questions are in Spanish for Spanish-speaking employees. The rule in question requires employees to lock out tag out a machine when guards are bypassed. Employees may use their hands while the machine is on to remove

1

material if their hands do not pass the guard. Jones also provided a hook to reach past the guard and clear the machine without locking out and tagging out.[1]

Mr. Hernandez testified that he knew the lock out tag out rule and that he could be injured if he violated it. When he disregarded the rule in the past, he never received a warning.[2] He also saw other employees regularly violate the rule without being disciplined. He further said he felt pressure to get work done, because Gustavo Mendez, the line leader, would become angry when the line went down, and he thought he was doing Jones's work in the manner it required.

Teresa Zalpa, a co-worker, testified she used her hands to pull fabric even if her hands went past the guard. She was never warned for her actions. Mr. Mendez testified that he did not violate the lock out tag out rule and had not observed anyone else violate it. Neither Ms. Zalpa nor Mr. Mendez saw Mr. Hernandez's accident.

Monica Cadaret, Jones's vice president, testified that she received a call about the incident and asked everyone to immediately leave the area. When she arrived on the scene, a hook to pull material laid on the machine.

Ken Hana, day shift supervisor, testified Jones had the lock out tag out rule and enforced it. When he observed anyone violating the rule, he warned them. A first offense resulted in a written warning, a second in termination. He was familiar with the machine on which Mr. Hernandez worked and its clogging problems. He confirmed that Jones provides tools to clear the clog or an employee could use hands outside the guard when locked out and tagged out.

As for treatment, Mr. Hernandez received emergency care and was transported to Vanderbilt to try to reattach his fingers. Unfortunately, this was unsuccessful. Dr. Wesley Thayer assigned a thirty-two percent whole-body impairment. Dr. Thayer testified in his deposition that the medical treatment and the bills for Mr. Hernandez's treatment at the University of Tennessee Medical Center and Vanderbilt, and his transport to Vanderbilt, were reasonable and necessary.

After the accident, Mr. Hernandez returned to work at Jones and signed a written warning for violating Jones's lock out tag out rule. He eventually left his employment.

At the hearing, the parties stipulated that Mr. Hernandez's compensation rate is $572.62, and he is limited to one time his impairment rating.

---

[1] The material is moving out of the machine, not into the machine.
[2] Mr. Hernandez testified in a deposition that he never placed his hands past the guard before his injury. He blamed his nerves for his false deposition testimony.

Mr. Hernandez asked the Court to provide him all the benefits to which he was entitled under the Tennessee Workers' Compensation Law.[3] He argued Jones did not exercise bona fide enforcement of the lock out tag out rule, and even if it did, he had valid excuses for violating it. Jones asserted that it enforced the lock out tag out rule, and Mr. Hernandez gave no valid excuse for violating it. It asked the Court to bar his claim.

## Findings of Fact and Conclusions of Law

The Court is compelled to first address witness credibility. The Court considered whether each witness was "calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). The Court also considered whether the witnesses changed testimony from prior depositions and recognized that some witnesses needed an interpreter.

The Court finds Monica Cadaret and Ken Hanna were credible. The remaining witness for Jones and witnesses for Mr. Hernandez seemed nervous and hesitant; they changed answers on the stand or from prior testimony; and they displayed bias rather than honesty.[4] The Court finds most of their testimony was not credible.

The parties stipulated to facts that would make Mr. Hernandez's injury compensable unless the claim is barred by the affirmative defense of willful failure to use a safety device. Jones must establish this defense by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-110(a)(5) and (b).

An employer defending on these grounds must prove: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012).

Before the Court may apply *Mitchell*, it must find that Mr. Hernandez violated a safety rule. *Hardin v. W.A. Kendall & Co.*, 2019 TN Wrk. Comp. App. Bd., LEXIS 23, at *13 (Jun. 10, 2019). In this case, the finding is formulaic, as he admitted violating the lock out tag out rule.

Moving to the *Mitchell* factors, Mr. Hernandez's own testimony showed he had actual notice of the rule and dangers associated with violating it, although no one had been hurt to his knowledge.

---

[3] The Court does not know the time period for which Mr. Hernandez requested temporary disability benefits. The issue was marked on the Dispute Certification Notice, but the parties did not stipulate regarding them.
[4] Mr. Hernandez also offered David Walker as a witness. The Court did not recount any portion of his testimony, as it found his testimony unreliable.

As for bona fide enforcement, the Court finds Jones enforced the rule. Jones submitted written lock out tag out warnings it gave to employees before Mr. Hernandez's injury. The evidence proves that Jones warned employees not to use their hands past the guard, and when anyone in authority noticed a lock out tag out violation, Jones warned the employee. While Mr. Hernandez and Ms. Zalpa stated that employees often violated the rule without punishment, the Court does not find this portion of their testimony credible.

Concerning the lack of a valid excuse for a rule violation, Jones proved it provided employees a safe way of performing the work without violating the rule. They could use their hands outside the guards or use a hook inside the guard without turning off the machine, or they could lock out and tag out the machine. Therefore, Jones proved Mr. Hernandez did not have a valid excuse.

Mr. Hernandez claimed he was excused for his violation for three reasons; (1) he saw other employees do it without punishment; (2) he was under pressure to complete production; and (3) he was performing work for the employer.

The Court finds his first excuse unpersuasive, as it has found the Jones exercised bona fide enforcement of the lockout tagout rule. Additionally, Mr. Hernandez produced no credible witness to corroborate his assertion.

His second excuse was that he was pressured to keep the machine running as to not slow production. He stated that Mr. Mendez would become angry when employees had to shut down the machine. Mr. Hernandez testified that anger pressured him to violate the rule. Although the line leader might get angry when a line goes down, this does not relieve an employee from following safety rules. Other options were available to him, as Jones provided the hook to clear the fabric, or he could have simply locked out the machine and cleared it. Further, he produced no written warnings or knew of no terminations for slow production, so the Court finds this excuse invalid.

Concerning his final excuse, an employee is responsible to perform work for an employer and follow its rules while on the clock. Essentially, his argument was that the employer was forcing him to work in an unsafe way. However, Mr. Hernandez again produced no credible witness to support his argument. The fact that he violated a safety rule to work faster is not an excuse, but rather an admission he chose to work in an unsafe manner.

The Court holds that Jones proved *Mitchell's* four factors by a preponderance of the evidence. Mr. Hernandez willfully violated the lock out tag out rule when he reached twenty-seven inches past the guard into a machine, which he had not locked or tagged out. His willful actions directly caused his injury. Therefore, his claim for benefits is barred.

4

## Alternative Findings

Solely if an appellate body finds error in the compensability holding, the Court makes the following alternative findings for the sake of judicial economy. *See Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-138 (Tenn. 2001) ("The trial court should … hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.") Guided by this authority, the Court finds in the alternative as follows:

- Mr. Hernandez suffered a thirty-two percent whole-body impairment arising primarily out of his employment, which would entitle him to 144 weeks of permanent partial disability benefits or $82,457.28.
- Jones must provide necessary and reasonable medical treatment with Dr. Thayer.
- The Court finds the treatment and bills for Mr. Hernandez's treatment were reasonable and necessary, and Jones must pay them.
- Mr. Hernandez requested temporary disability benefits, but he did not testify as to the specific date he returned to work, so the Court cannot tabulate the amount of time he missed from work or the amount of temporary disability benefits that would be owed.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hernandez's claim for benefits is denied.

2. The $150.00 filing fee is taxed to Jones or its carrier under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August 2019), payable to the Clerk within five days of this order becoming final.

3. Jones shall file the SD-2 with the Clerk within ten days of the date of judgment.

4. Unless appealed, this order shall become final thirty days after entry.

   **ENTERED August 28, 2020.**


_____
/s/ Brian K. Addington
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:

1. First Report of Injury
2. Notice of Denial
3. Wage Statement
4. Final Medical Report
5. Collective-Photographs
6. Jones Fiber Products Documented Verbal Warnings
7. Collective-Safety Training Documents 10/26/2017-10/29/2017
8. Group Training Certification 6/20/2018
9. Collective-Acknowledgement of Safety Training 9/5/2018-9/6/2018
10. Collective-Safety Forms
11.  Safety Orientation Checklist
12. Lock Out Tag Out Video Slides
13. Deposition of Dr. Wesley Thayer
14. Medical Records-University of Tennessee Medical Center
15. Collective-Medical Billing Invoices
16. Medical Records-Vanderbilt University Medical Center
17. Jones Fiber Products Four Safety Objectives 9/6/2018

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice 12/17/2019
3. Request for Scheduling Hearing
4. Scheduling Hearing Order
5. Amended Scheduling Hearing Order
6. Order Continuing Mediation
7. Pre-Compensation Hearing Statement
8. Employer's Witness and Exhibit List
9. Pre-Compensation Hearing Statement
10. Employee's List of Proposed Witnesses and Exhibits
11. Employee's Medical Records for Introduction into Evidence
12. Final Dispute Certification Notice 8/13/2020

**CERTIFICATE OF SERVICE**

I certify that a copy of the Compensation Order was sent as indicated on August 28, 2020.

| Name | Certified Mail | Regular Mail | Email | Sent to: |
|------|------|------|------|------|
| David Peebles Employee's Attorney | | | X | office@torreslawfirm.com |
| Connor Sestak Employer's Attorney | | | X | csestak@morganakins.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



## Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**

**Appellant(s)** (Requesting Party): _____    ☐ Employer ☐ Employee

Address: _____    Phone: _____

Email: _____

Attorney's Name: _____    BPR#: _____

Attorney's Email: _____    Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*