**FILED**

**April 25, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:22 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | |
|---|---|
| KATHLEEN DELORES LAGUARDIA, **Employee,** | ) ) ) ) **Docket Number: 2016-02-0380** |
| v. | ) ) |
| TOTAL HOLDINGS USA, INC. d/b/a HUTCHINSON SEALING SYSTEMS, **Employer,** | ) ) ) **State File Number: 51640-2016** |
| and | ) ) |
| INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, **Insurance Carrier.** | ) **Judge Brian K. Addington** ) ) |

---

## COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on April 13, 2018, for a Compensation Hearing. The central legal issue is whether Ms. LaGuardia proved by a preponderance of the evidence that her injury arose primarily out of her employment. The Court holds that her injury did not arise primarily out of her employment, and she is not entitled to medical, temporary or permanent disability benefits.

### History of Claim

Ms. LaGuardia worked in Hutchinson's production area. She trimmed parts and applied sponges to the parts she trimmed. The production area contained dark, rubber dust that employees swept at the end of each shift to prevent it from collecting on the floor. The trimmings produced small metal bits that went onto the floor, her clothing, and into the soles of her shoes. When she applied glue-backed sponges, her efforts

1

produced paper waste that ended up on the floor and in trashcans. Empty production totes containing trash and trimmed parts' waste were stacked near her workstation. Ms. LaGuardia testified the trash often spilled onto the production floor, and oil was present in her work area. Before July 11, 2016, Ms. LaGuardia never fell at work.

However, on July 11 Ms. LaGuardia stood on a flat rubber mat at her work-station when she stepped from the mat[1] to the concrete floor. When her right foot touched the concrete floor, her foot slipped and went airborne. Her ankle turned and slammed onto the concrete floor as she fell. Ms. LaGuardia demonstrated her fall to the Court, a classic slip-and-fall scenario with her right leg flying into the air and her body falling to the floor.

Linda Hall worked next to Ms. LaGuardia during the shift in question. Ms. Hall and Ms. LaGuardia worked within four to six feet of each other with a waist-high workstation between them. She testified that she observed Ms. LaGuardia during the accident because the two discussed workplace fans. She testified she saw Ms. LaGuardia catch her right foot on her left leg and fall when she attempted to step around the workstation to adjust a fan. Ms. Hall left Ms. LaGuardia in the floor and went for help.

Hagen Allen, a supervisor, is one of several employees who came to Ms. LaGuardia's assistance. He asked her how she fell, and she told him she tripped.[2] He remained with Ms. LaGuardia until Ms. Cynthia Stanton, the plant nurse, arrived.

Ms. Stanton not only performs nursing activities but also inspects injury sites. When she arrived at Ms. LaGuardia's side, she examined the floor and noticed only black dust. Along with Mr. Allen and other employees, she assisted Ms. LaGuardia into a wheelchair and to the nursing station.

While Ms. LaGuardia was in the nursing station, Brian Jarnigan, a production supervisor, examined the accident area. He found nothing but black dust on the floor. Mr. Jarnigan looked under the workstation for anything that might have caused the fall. He took photographs of the area, but the black dust was so minimal that it did not appear in the photographs.

Meanwhile, at the nurse's station, Lisa Meadows, human resource manager, joined Ms. Stanton in questioning and examining Ms. LaGuardia. At first, Ms. LaGuardia was unsure how she fell or what caused her to fall. Ms. Meadows removed Ms. LaGuardia's right shoe and handed it to Ms. Stanton. Ms. Stanton did not notice anything on the sole that would cause someone to fall. Ms. Stanton also examined Ms. LaGuardia's left shoe

---

[1] Ms. LaGuardia never asserted the rubber mat caused her fall.
[2] Later when Mr. Allen wrote a written account of the matter, he stated, "She said she fell and don't know what she fell on."

without removing it and found nothing that would cause a fall. During the examination, Ms. Meadows and Ms. Stanton noticed that Ms. LaGuardia had a small cut on the interior portion of her right ankle.

After the examination, Ms. LaGuardia's pain increased causing her to ask for a doctor. Before she left, Ms. LaGuardia signed a physician panel and incident report. She noted, "Step to right, on right foot, slipped on right foot, right ankle slammed on floor and I fell backward to floor."

Ms. LaGuardia went to Wellmont, the panel selection. X-rays performed there indicated a fractured tibia. Wellmont providers referred her to Watauga Orthopedics.

Ms. LaGuardia treated first with Dr. Eric Parks and later Dr. Karen McRae, both at Watauga Orthopedics. Ms. LaGuardia reported to them that she slipped and fell. Dr. McRae performed surgery on Ms. LaGuardia's right leg and placed her at maximum medical improvement (MMI) on January 11, 2017. Dr. McRae assigned a four-percent whole-body impairment, according to the *AMA Guides to the Evaluation of Permanent Impairment*, 6th Edition, and found she was unable to work from the date of the incident until her MMI date.

During her deposition, Dr. McRae testified that she relied on Ms. LaGuardia's history in determining how the fracture occurred. Concerning the mechanism of injury, Dr. McRae stated, "Her med-, her medial ankle was, was, was on the floor and then as she fell she has an external rotational deformity." Later she stated, "Hers was very consistent with her ankle being in the, with the medial malleolus on the floor and then with her body weight externally rotating as she fell backward." Dr. McRae concluded that Ms. LaGuardia's ankle was on the floor because of the cut on the inside portion of her ankle. In other words, "[H]er ankle was twisted and laying [sic] flat on the concrete."

Although Hutchinson initially offered Ms. LaGuardia a physician panel, it denied her claim the following day because, in its opinion, she could not identify what caused her to fall.

During her recovery, Ms. LaGuardia inspected the clothing that she wore during the accident. Her shirt was dirty from oily rubber and she found oil on her pants. Ms. LaGuardia also found a small sheet metal screw and pieces of metal from the trimmings at work in the sole of her right shoe. She removed them with pliers and introduced them into evidence. Ms. LaGuardia did not know when or where the screw entered her shoe. Several witnesses for the employer testified Hutchinson does not use the type of screw in question in its production processes.

During argument, Ms. LaGuardia acknowledged that she does not know what caused her to fall. However, she asserted she slipped due to either one or a combination

of factors: oil, oily rubber dust, sponge material, paper from the sponges, metal trimmings, or the screw. Ms. LaGuardia asserted her injury arose primarily out of and in the course and scope of her employment because she slipped at work and found no published slip-and-fall case where the court did not award workers' compensation benefits. She argued she only has to prove she slipped, and the Court can use circumstantial evidence to find her slip-and-fall arose primarily from her employment. Further, she requested temporary benefits from the date of injury until MMI, past and on-going medical benefits, and permanent partial disability benefits.

Hutchinson countered that Ms. LaGuardia has the burden to prove every element of her claim, including what caused her fall. It argued she did not prove that she slipped but rather the preponderance of the evidence indicated her feet tangled and she fell. Hutchinson did not deny that her injury occurred in the course and scope of her employment but denied it arose primarily from her employment. It contended that its employees found no cause for her fall except for minimal, rubbery dust on the floor. Therefore, Hutchinson asked the Court to deny her claim for benefits.

### Findings of Fact and Conclusions of Law

Ms. LaGuardia has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

Ms. LaGuardia must demonstrate her injury arose primarily out of her employment. To do so, she must establish that her slip-and-fall was due to a condition of the employment that presented a peculiar or additional hazard to her, since her injury occurred while she stepped on flat, level concrete. *Byrom v. Randstad N. Am., L.P.,* No. M2011-00357-WC-R3-WC, 2012 Tenn. LEXIS 152, at *13 (Tenn. Workers' Comp. Panel Mar. 8, 2012). This Court must consider all the evidence, including circumstantial evidence, as to what caused Ms. LaGuardia to fall. *LaGuardia v. Hutchinson Sealing Systems, et al,* 2017 TN Wrk. Comp. App. Bd. LEXIS 73, at *8-10 (Nov. 29, 2017).

Concerning the witnesses, the Court found them all credible despite minor differences in testimony. The Court considered the testimony and each of the factors that Ms. LaGuardia asserted might have caused her fall and holds that preponderance of the proof is insufficient to find that they did.

Concerning the oil on the floor, the Court examined Ms. LaGuardia's shoes and the photographs Mr. Jarnigan took immediately after her fall. No oil was present on her

4

shoes or noticeable in the photographs. Ms. Stanton testified nothing but dust was on the floor. Ms. LaGuardia testified she had oil on her pants when she examined them at home. However, this one statement does not overcome the preponderance of the evidence that no oil was on the floor or her shoes.

Regarding the alleged oily dust, the Court finds that rubbery dust was on the floor, as Ms. Stanton confirmed. Whether it was oily or not is another question. The dust left stains on Ms. LaGuardia's clothing, but no oily dust was present on her shoes. The preponderance of the evidence indicates this was not the cause of her fall.

As for the sponge material and its backing, some sponge material was in the cracks and soles of her left shoe. The Court was unable to identify any on her right shoe. Even if some were on her right shoe, the sponge material is tacky not slippery and would have more than likely caused her foot not to slip. No sponge backing was on her shoes or in the photographs of the accident scene. The preponderance of the evidence indicates that the sponges or its backing did not cause her fall.

The Court also considered the metal trimmings. They were present in the soles of Ms. LaGuardia's shoes but are minute and minimal. Ms. Stanton did not find any on the floor, and they do not appear in the photographs. The preponderance of the evidence indicates that the metal trimmings did not cause her fall.

Ms. LaGuardia removed a metal screw[3] from her right shoe at home sometime after the accident. She indicated it was located on her right shoe, so the head of the screw might have touched the ground as she walked. The screw might have slid on the flat concrete; however, the head of the screw is undamaged and no distinct scratch in the concrete appears in the photographs. Further, the screw is so small that it would only cover a tiny area of the sole of the shoe. The preponderance of the evidence indicates that the screw did not cause Ms. LaGuardia's fall.

Other circumstantial evidence comes from Dr. McRae, who indicated the mechanism of Ms. LaGuardia's fall as her ankle was on the ground as she slid. This differs from Ms. LaGuardia's testimony and demonstration of her fall, where she asserted her foot slipped straight up into the air and slammed to the floor, instead of sliding across the floor.

Considering all of the circumstantial evidence, alone and in combination, the Court holds that Ms. LaGuardia did not prove by a preponderance of the evidence that the potential hazards she mentioned caused her fall. This matter is similar to *Byrom* where the Court stated:

---

[3] Ms. LaGuardia did not prove the screw came from Hutchinson's premises. In fact, several witnesses testified Hutchison did not use these screws.

5

The evidence presented in this case merely shows that there were several potential causes for Employee's fall. Some causes were related to his work; some causes were not related to his work. The evidence did not support a conclusion that any one of those potential causes was more likely than not the actual cause of the fall and therefore the cause of Employee's injury.

*Byrom,* at *17.

The Court considered Ms. Hall's testimony and finds it the most persuasive. She testified Ms. LaGuardia's feet tangled and she fell. Ms. LaGuardia asserted the workstation would have blocked Ms. Hall's view of her feet. However, Ms. Hall explained where she stood and that Ms. LaGuardia was in the act of stepping around the workstation when she fell.[4]

Thoroughly weighing all the evidence, the Court holds that Ms. LaGuardia failed to prove by a preponderance of the evidence that her injury arose primarily from her employment, and her claim for workers' compensation benefits it denied.

### Alternative Findings

Solely in the event that an appellate body finds error in the compensability holding, the Court makes the following alternative findings for the sake of judicial economy. *See Cunningham v. Shelton Sec. Serv.,* 46 S.W.3d 131, 137-138 (Tenn. 2001). ("The trial court should . . . hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.")

The Court holds in the alternative that Ms. LaGuardia sustained a four-percent whole-body impairment. This entitles her to eighteen weeks of permanent partial disability benefits in the amount of $7,021.98. According to Dr. McRae, she was temporarily totally disabled from work from July 12, 2016, until she reached MMI on January 11, 2017, so she is entitled to $10,254.32 in temporary total disability benefits. Further, Hutchinson shall pay for all past medical treatment amounting to $55,169.13 and provide future medical treatment with Dr. McRae. Additionally, Ms. LaGuardia is entitled to 481 miles reimbursement totaling $226.07, and discretionary costs of $1,109.05.[5]

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. LaGuardia's claim is denied on the grounds of compensability.

---

[4] Ms. LaGuardia testified she was stepping around the workstation to adjust a fan.

[5] Discretionary costs include Ms. LaGuardia's portion of the transcript of a hearing, Dr. McRae's expert fee, and transcription of Dr. McRae's deposition.

2. Hutchinson shall pay the $150.00 filing fee under the Tennessee Compilation Rules and Regulations 0800-02-21-.07 (Nov. 2016) within five days of entry of this order.

3. Hutchinson shall file an SD-1 within five days of entry of this order.

4. Absent an appeal of this order, it shall become final thirty days after issuance.

ENTERED April 25, 2018.

___/s/Brian K. Addington_____
**BRIAN K. ADDINGTON, JUDGE**
Court of Workers' Compensation Claims

## APPENDIX

<u>Exhibits:</u>
1. Records from Wellmont Urgent Care
2. Records from Watauga Orthopaedics
3. Revised summary of medical expenses and attached bills
4. Curriculum Vitae of Dr. Karen McRae
5. Correspondence authored by Dr. McRae dated 9/7/2016
6. Permanent Partial Disability assessment by Dr. McRae
7. Summary of Medical Expenses
8. Shirt worn by Ms. LaGuardia
9. Shoes worn by Ms. LaGuardia
10. Wire and screw (also exhibited as 19A)
11. Photographs of worksite
      11A. Ms. LaGuardia standing at work table
      11B. Right side view of Ms. LaGuardia at work table
      11C. Red trash can at work site
      11D. Interior of red trash can
      11E. (Collective-3 photos) Ms. LaGuardia front view standing at work table
      11F. Photo sheet Ms. LaGuardia front view standing at work table and red trash can
12. First written statement of Ms. Hall
13. Second written statement of Ms. Hall
14. Employer's responses to interrogatories and requests for production
15. Ms. LaGuardia's attorney fees and expenses
16. Itemization of mileage

17. Updated medical records & chronology filed September 30, 2016
18. Stipulated medical records
19. Exhibits at Expedited Hearing
    19A. Metal screw and wire fragment
    19B. Rubber molding
20. Transcript of Expedited Hearing
21. Deposition transcript of Dr. McRae

Technical Record:
1. Petition for Benefit Determination
2. Affidavit of Kathleen LaGuardia
3. Initial Dispute Certification Notice
4. Joint Stipulations of the Parties
5. Ms. LaGuardia's Witness List
6. Employer's Witness List
7. Ms. LaGuardia's Exhibit List
8. Employer's Exhibit List
9. Ms. LaGuardia's Prehearing Statement
10. Employer's Prehearing Statement
11. Final Dispute Certification Notice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of April, 2018.

| Name | Certified Mail | First Class Mail | Email | Service Sent to: |
|------|----------------|------------------|-------|------------------|
| Russell Adkins, Esq. Employee's Attorney | | | X | radkins@wilsonworley.com |
| Michael Forrester, Esq. Employer's Attorney | | | X | forrest@hsdlaw.com |

**PENNY SHRUM, COURT CLERK**
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8